U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2017 APR 20 PM 1:04
CLERK
BY /AW/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 2:16-cr-84 |
| ) | |
| ALISON GU, a/k/a "Alison Ling," ) | |
| "Ally Koo," "Ai J. Chen," "Ai Jen Chen," ) | |
| "Ai Chen," "Jing Shao," "Yijing Gu," ) | |
| "Yijing Lin," "Alison Yi Gu," and ) | |
| MATTHEW ABEL ) | |

**OPINION AND ORDER DENYING MOTIONS TO SEVER COUNTS AND DEFENDANTS FOR TRIAL**
(Docs. 90 & 91)

On February 24, 2017, Defendant Alison Gu moved to sever the counts and defendants set forth in a July 19, 2016 Superseding Indictment (Doc. 90). On that same date, Defendant Matthew Abel filed a separate motion to sever defendants for trial (Doc. 91). Defendants join in each other's motions.

Defendants contend that under Fed. R. Crim. P. 8(a) the counts of the Superseding Indictment were improperly joined or, in the alterative, under Fed. R. Crim. P. 14(a), severance is warranted because a joint trial would be unfairly prejudicial. On March 17, 2017, the government opposed the motions, arguing that joinder was proper and Defendants offered no justification for severance which would result in an unnecessary expenditure of judicial and party resources. On March 17, 2017, the court took the pending motions under advisement.

The government is represented by Assistant United States Attorney Michael P. Drescher. Defendant Gu is represented by Assistant Federal Public Defender David L. McColgin and Defendant Abel is represented by Craig S. Nolan, Esq.

**I.    The Superseding Indictment and the Motions to Sever.**

The three-count Superseding Indictment charges Defendants as follows: Count One charges both Defendants with devising and executing a scheme to defraud five banks

through the submission of mortgage loan applications and re-financing applications containing false information in violation 18 U.S.C. § 1344(1) & (2). Count Two charges Defendant Gu with willfully and knowingly making a false statement in a passport application with the intent to induce and secure the issuance of a passport for her own use in violation of 18 U.S.C. § 1542. Count Three charges that Defendant Gu knowingly and unlawfully possessed or used the identification of another person in relation to the false statement alleged in Count Two in violation of 18 U.S.C. § 1028A(a)(1).

In their motions, Defendants ask the court to hold three trials: separate trials for Defendant Gu and Co-Defendant Matthew Abel with regard to Count One's allegation of bank fraud, as well as a separate trial for Defendant Gu with regard to Counts Two and Three. In the absence of severance, Defendant Gu contends that "the jury will inevitably see the evidence of use of false identification in the bank fraud as proof of a propensity to use false identification, and thus as evidence of guilt regarding the alleged use of a false identity in the passport application." (Doc. 90 at 4.) In turn, Defendant Abel argues that the voluminous evidence in this case "almost exclusively implicat[es] Ms. Gu" and, without expert witness testimony linking him to the alleged bank fraud scheme, "it is anticipated that [Defendants] will offer at trial mutually antagonistic defenses that the other was responsible for the alleged fraudulent scheme such that acceptance of one defense will preclude acceptance of the competing defense and require conviction of the co-defendant." (Doc. 91 at 2.)

II.     **Conclusions of Law and Analysis.**

    A.     **Whether Joinder of Counts in the Superseding Indictment Was Proper.**

Joinder of offenses is permissible if those offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Counts that have a sufficient logical connection to each other can be tried together, as can those where the same evidence may be used to prove each count." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (internal citations and quotation marks omitted). "Rule 8(a) is not limited

2

to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (quoting Webster's New Int'l Dictionary (2d ed.)); *see also United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) ("For purposes of analysis under Rule 8(a), no one characteristic is always sufficient to establish similarity of offenses, and each case depends largely on its own facts.") (internal citations and quotation marks omitted). "Each of [the] tests for when offenses may be tried together reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988).[1]

In each count of the Superseding Indictment, Defendant Gu is alleged to have used fraudulent identification to obtain something of value. In this respect, the three counts, at least insofar as she is concerned, are "somewhat alike" and have a "general likeness." *See id.*; *see also United States v. Robinson*, 294 F. App'x. 630, 632 (2d Cir. 2008) (summary order) (concluding that bank fraud, mail fraud, wire fraud, and interstate transportation in stolen securities charges were all properly joined under Rule 8(a) because they were "of the same or similar character"); *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (finding joinder of bank fraud and mail fraud charges to be of the "same or similar character" because the indictment alleged that the defendant "attempted to defraud the governmental entities with falsified receipts, and attempted to defraud his bank through falsified loan documentation").

---

[1] The Second Circuit has not decided whether, in ruling on a Rule 8 motion to sever, a district court may consider the government's pre-trial representations regarding the evidence it intends to introduce at trial, although it has signaled its disapproval of this practice based on the plain language of Rule 8. *See United States v. Rittweger*, 524 F.3d 171, 178 n.3 (2d Cir. 2008) ("Without deciding the issue, however, we caution that the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment, just as the language of the Rule does not allow for the consideration of evidence at trial."). In an unreported case, the Second Circuit cited to *Rittweger* with approval for the proposition that "the propriety of joinder turns on what is alleged in the indictment, not on evidence later adduced." *United States v. Bonventre*, 646 F. App'x. 73, 80 (2d Cir. 2016) (summary order).

3

Defendant Gu's citation to *United States v. Litwok*, 678 F.3d 208, 216-17 (2d Cir. 2012) does not compel a different outcome. There, the Second Circuit addressed joinder of a non-tax crime with a tax fraud charge and concluded that joinder was improper "where it is [not] shown that the tax offenses arose directly from the other offenses charged" and where there is no "evidentiary overlap" between the charged offenses. *Litwok*, 678 F.3d at 216 (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)). In contrast, in this case, the charges are of the "same or similar character" under Rule 8(a) because the Superseding Indictment alleges that Defendant Gu attempted to defraud both the United States Passport Office and several FDIC insured financial institutions through falsified identification as part of a fraudulent scheme. Joinder of the counts of the Superseding Indictment is therefore proper.

### B. Whether Severance Is Warranted.

"Even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder." *Werner*, 620 F.2d at 928. Where prejudice is apparent, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (quoting *Turoff*, 853 F.2d at 1043); *see also United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978) ("The burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial."). "In making the determination, the trial judge must consider what trial developments are foreseeable at the time the motion to sever is made." *United States v. Stevens*, 188 F. Supp. 3d 421, 425 (M.D. Pa. 2016) (citing *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991)).

Defendant Gu argues that she will be substantially prejudiced if severance is not granted because if all three counts are tried together, the jury will improperly use

4

evidence relevant to one count as propensity evidence for the remaining counts. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). She further contends that with separate trials, "such propensity evidence would be excluded under Fed. R. Evid. 404(b)." (Doc. 90 at 4.)

The government counters that evidence of other crimes, wrongs, or acts is not governed by Fed. R. Evid. 404(b) where such evidence is intrinsic to the execution of a scheme. *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.") (internal quotation marks omitted).

In the alternative, the government asserts that if Count One is tried separately from Counts Two and Three, the evidence of Defendant Gu's alleged use of a fraudulent identity would be admissible under Rule 404(b)(2) for the purpose of proving Defendant Gu's intent, preparation, plan, modus operandi, and absence of mistake. *See* Fed. R. Evid. 404(b)(2) (providing that evidence of other bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). In support, the government represents that it intends to show that Defendant Gu obtained two fraudulent New Hampshire driver's licenses on the same day, one in the name of "Chen," which she allegedly used in connection with Count One, and one in the name of "Koo," which she allegedly used in Counts Two and Three. The government further represents that it will establish that, in order to obtain these two driver's licenses, Defendant Gu undertook an "identical scheme" by allegedly (1) identifying a female who was born and died in the 1980s; (2) forging an Alabama probate court document purporting to change the deceased person's name to "Koo" or "Chen"; (3) obtaining a Social Security card in the number originally issued to the deceased female in the name of "Koo" or "Chen"; and (4) using

5

those records to obtain New Hampshire driver's licenses with Defendant Gu's photograph bearing the names "Koo" and "Chen." (Doc. 102 at 2-4.)

Arguably, the proffered evidence is inadmissible as intrinsic evidence of a single fraudulent scheme because although Counts Two and Three are inextricably intertwined, in Count One, the government alleges Defendant Gu only used false identification with the name "Chen." *See United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004) ("[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).").

Under Rule 404(b), however, the alleged fraudulent identification for both "Chen" and "Koo" may be admissible for the purpose of establishing intent, preparation, plan, modus operandi, or absence of mistake. *See United States v. Edwards*, 342 F.3d 168, 177 (2d Cir. 2003) (explaining that before government may introduce evidence under Rule 404(b)(2) on intent, "some similarity or tangible connection between the acts must be identified, something that makes the prior act relevant to proving the contested fact"). The government represents that it will establish at trial a "similarity or tangible connection" between the evidence that supports each count in order to rebut Defendant Gu's anticipated defense of lack of intent at trial. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("While the admission of similar act evidence to prove intent or knowledge generally should await the conclusion of the defendant's case, such evidence is admissible during the [g]overnment's case-in-chief if it is apparent that the defendant will dispute that issue[.]") (internal citations omitted); *see also United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quoting *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (per curiam)). Because the evidence related to Defendant Gu's alleged procurement and use of

fraudulent identification as alleged in Counts Two and Three may be admissible in the trial of Count One under Rule 404(b)(2), Defendant Gu has failed to establish the "substantial prejudice" necessary for severance. Her motion to sever counts is therefore DENIED.

### C. Defendant Abel's Motion to Sever Defendants.

Pursuant to Fed. R. Crim. P. 14(a), Defendant Abel argues that severance of Defendants for separate trials on Count One is warranted because he anticipates that he will present a mutually antagonistic defense to Defendant Gu. *See United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) ("Defenses are mutually antagonistic when accepting one defense requires that 'the jury must of necessity convict a second defendant.'") (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991)). The Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial *per se*" and that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Such a risk might occur if evidence inadmissible against one defendant but probative of his guilt is admitted against a codefendant, or if exculpatory evidence is excluded due to a codefendant's presence." *Yousef*, 327 F.3d at 150. "However, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539).

Defendant Abel asserts that a "key issue" for the jury will be to determine the identity of the person who allegedly sent, completed, and/or signed allegedly fraudulent loan applications and electronic communications with knowledge of their falsity. (Doc. 103 at 1.) He contends that because the government has significant evidence to demonstrate that the allegedly fraudulent documentation originated from Defendants' shared household, they will be "forced to implicate each other explicitly or implicitly as the party exclusively responsible for the alleged false statements[.]" *Id.* at 2. He further contends that this will force Defendants to "aggressively attack each other on substance

7

and credibility, becoming, in essence, a second prosecutor." *Id.* In such an event, he asserts a jury would not be able to accept both Defendants' defenses which, in turn, would prevent a reliable and just determination of each Defendant's guilt.

Defendant Abel has not shown that his proposed defenses will be so antagonistic to Defendant Gu's that accepting his version of the facts would *require* the jury to convict Defendant Gu. A jury may accept both Defendants' anticipated defenses, finding that neither of them had the specific intent to defraud the identified financial institutions. Defendant Abel's further argument he will suffer undue prejudice due to the "dearth of evidence demonstrating that he is responsible for the allegedly fraudulent documents," *id.* at 2-3, is unavailing because "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials," *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks omitted). "Even 'joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.'" *Id.* (quoting *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993)).

Although Defendant Abel may be correct that Defendants are likely to implicate each other at trial, "[t]he mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." *United States v. Serpoosh*, 919 F.2d 835, 837 (2d Cir. 1990) (internal quotation marks omitted). Indeed, "[t]he testimony of a codefendant implicating the defendant . . . not only is relevant but is likely to be received where there has been a severance (as commonly happens where the codefendant has made a cooperation agreement, or if the codefendant has no further privilege under the Fifth Amendment by reason of a prior acquittal or conviction or immunization order)." *United States v. Haynes*, 16 F.3d 29, 32 (2d Cir. 1994). "While an important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence." *Zafiro*, 506 U.S. at 540 (alterations and internal quotation marks and citations omitted).

8

In *Zafiro*, the Supreme Court held that even if there were some risk of prejudice to the codefendants from their presentation of mutually antagonistic defenses, "it is of the type that can be cured with proper instructions[.]" *Id.* at 540. The Court held that the district court's instruction to the jury that it "must give separate consideration to each individual defendant and to each separate charge against him" and that "[e]ach defendant is entitled to have his or her case determined from his or her own conduct and from the evidence that may be applicable to him or her" was sufficient "to cure any possibility of prejudice." *Id.* at 541 (alterations and internal quotation marks omitted). The Second Circuit has routinely cited *Zafiro* in affirming the use of limiting instructions.[2] District courts within the Second Circuit have reached similar conclusions.[3] As a result, in the event that Defendants present mutually antagonistic defenses at trial, they may seek an appropriate limiting instruction to cure any resulting prejudice.

Finally, Defendant Abel argues that a joint trial with Defendant Gu puts him in an "untenable situation" because a joint trial would compromise their respective

---

[2] *See, e.g, Yousef*, 327 F.3d at 151(affirming a proper limiting instruction which stated: "the issue of each defendant's guilt is totally personal to the individual defendant. You must make a separate determination as to whether or not any defendant's guilt as to the specific charge has been proven beyond a reasonable doubt" and "[i]n making that judgment, you are to disregard entirely the circumstance that two defendants have been tried together . . . ."); *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997) ("Moreover, the district court gave limiting instructions in order to deter any potential spillover. At the outset, the court instructed the jury that '[t]here's no group culpability here'; in its final charge, the court told the jury, 'you must consider the case against each defendant on each charge separately. In effect, we have . . . seven separate trials that have taken place before you.'") (internal citations omitted).

[3] *See, e.g., United States v. Feng Ling Liu*, 2014 WL 917048, *3 (S.D.N.Y. Mar. 7, 2014) (concluding that "[s]hould [defendant] and her co-defendants ultimately assert mutually antagonistic defenses, they may request [limiting instructions similar to the instructions in *Zafiro*] to cure any risk of prejudice.") (internal quotation marks omitted); *United States v. Abakporo*, 2013 WL 6188260, at *3 (S.D.N.Y. Nov. 25, 2013) ("In those rare instances where a defendant establishes a high risk of prejudice, however, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.") (internal quotation marks omitted); *United States v. Cournoyer*, 2012 WL 6539659, at *5 (E.D.N.Y. Dec. 14, 2012) (recognizing that "[e]ven where defenses are mutually exclusive, severance is not *per se* required" and that "[j]ury instructions will often suffice to cure prejudice"); *United States v. Philistin*, 2007 WL 1388122, at *3-4 (N.D.N.Y. May 9, 2007) (finding that jury instructions similar to those in *Zafiro* and *Yousef* were adequate to safeguard the defendant from any prejudice stemming from a mutually antagonistic defense).

9

constitutional rights to testify on their own behalf at trial. (Doc. 91 at 4.) He asserts that they "share a long term, committed domestic partnership and are responsible for raising children who reside in their household" and thus are "intimate life partners who share life together just like married couples." (Doc. 103 at 3.) He expresses a desire not to be forced to testify against his domestic partner if he decides to take the witness stand. "In trials under federal law, the federal courts interpret testimonial privileges by reference to the common law and 'in light of reason and experience.'" *In re Witness Before Grand Jury*, 791 F.2d 234, 236 (2d Cir. 1986) (quoting Fed. R. Evid. 501).

At common law, two distinct lines of marital privileges have developed, the "adverse testimony privilege" and the "confidential communications privilege." *Id.* at 236-37. "The adverse spousal testimony privilege permits an individual to refuse to testify in a criminal proceeding against her or his spouse" and "rests on the notion that a husband and wife should be able to trust each other completely, and that marriage is a sanctuary." *United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067, 1070 (2d Cir. 1995). The confidential communications privilege "is narrower than the adverse spousal testimony privilege and seeks only to protect the intimacy of private marital communications, but it can be invoked by either spouse to prevent the revelation of such communications." *Id.* (internal citations and quotation marks omitted).

Defendants are not married and therefore the adverse spousal privilege is inapplicable. *Id.* ("The adverse spousal testimony privilege is not applicable except in proceedings where one spouse is a party and the other spouse is called to testify."). Defendant Abel cites no cases extending the common law marital privilege to non-married couples, and the court has found none. Even in the case of married codefendants, courts have concluded that the privilege against adverse spousal testimony is not a fundamental right that warrants severance. *See, e.g., United States v. Artates*, 2012 WL 6597752, at *2 (D. Haw. Dec. 18, 2012) (holding that the defendant was not entitled to a severance "merely because he would rather not testify against his wife at a joint trial"); *see also United States v. Galvan*, 2006 WL 1659610, at *2 (D. Colo. June 8, 2006) ("Nor

will [the defendant] be denied the opportunity to provide exculpatory testimony in his own defense. To be sure, [the defendant] shares with myriad criminal defendants the common dilemma whether to dispute his guilt by inculpating another person. That the person he might inculpate happens to be his wife does not foreclose that strategy."). Against this backdrop, in the absence of an applicable privilege, Defendant Abel's desire not to testify against Defendant Gu in light of their personal relationship, while understandable, is not grounds for severance.

## CONCLUSION

For the foregoing reasons, the court hereby DENIES Defendant Gu's motion to sever counts and defendants (Doc. 90) and Defendant Abel's motion to sever defendants for trial (Doc. 91).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of April, 2017.

Christina Reiss, Chief Judge
United States District Court