```
               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA    )
                            )
          v.                )   Criminal Action No.
                            )   2:16-cr-00084-1
ALISON GU,                  )
          Defendant.        )


               MOTION TO REVOKE
             CONDITIONS OF RELEASE

          As recorded on Monday, April 3, 2017
             United States District Court
             for the District of Vermont
                 Burlington Division
          Federal Building, 11 Elmwood Avenue
             Burlington, Vermont  05402


          Before the Honorable John M. Conroy


APPEARANCES:
ON BEHALF OF THE UNITED STATES OF AMERICA:
     MICHAEL P. DRESCHER, ASST. UNITED STATES ATTORNEY
     United States Attorney's Office
     Federal Building, 11 Elmwood Avenue
     PO Box 570
     Burlington, Vermont 05402
     (802) 951-6725 | michael.drescher@usdoj.gov

ON BEHALF OF THE DEFENDANT:
     DAVID L. MCCOLGIN, ASST. FEDERAL PUBLIC DEFENDER
     Federal Public Defender's Office
     126 College Street  Ste 410
     Burlington, Vermont 05401
     (802) 862-6990 | david_fd.org


TRANSCRIBER:  PAMEL MAYO HAMEL
```

INDEX


WITNESSES

| AGENT JEREMY STALLA | Page | Line |
|---|---|---|
| Direct Examination by Mr. Drescher | 4 | 8 |
| Voir Dire Examination by Mr. McColgin | 12 | 20 |
| Cross Examination by Mr. McColgin | 27 | 13 |
| Redirect Examination by Mr. Drescher | 30 | 1 |


EXHIBITS


Governments

| Exhibit | Description | Ident | Rec'd |
|---|---|---|---|
| 1 | Hearing Transcript for Summary Judgment | 5 | 23 |
| 4 | Credit cards and Bank Cards Seized during Search Warrant | 11 | 13 |
| 5 | Page from Power Point Presentation | 13 | 18 |
| 6 | Photo showing Notary Stamp and Gold Seal | 15 | 20 |
| 7 | Brevard County, Florida Complaint 18th Judicial District | 7 | 21 |

```
 1                   MONDAY, APRIL 3, 2017;

 2     --------------------------------------------------------------

 3               THE CLERK:  Please be seated.  Your Honor, the

 4     matter before the court this afternoon is criminal action

 5     16-cr-84-1, United States of America versus Alison Gu, who's

 6     present in the court room this afternoon, with Assistant

 7     Federal Public Defender David McColgin; representing the

 8     Government is Assistant United States Attorney Michael

 9     Drescher, and we're here on the Government's motion to

10     revoke conditions of release.

11               THE COURT:  Mr. Drescher, preliminarily, let me

12     just inquire, which prong under 3148 is the Government

13     proceeding on; probable cause to believe a new offense was

14     committed, or that another violation of pre-trial release

15     was imminent?

16               MR. DRESCHER:  The former, Your Honor, that a crime

17     was committed, a violation of 1017.

18               THE COURT:  You may call your first witness.

19               MR. DRESCHER:  We call Special Agent Jeremy Stalla,

20     Your Honor.

21               THE CLERK:  Please raise your right hand, and state

22     your name for the record, sir.

23               SPECIAL AGENT STALLA:  Jeremy Stalla.

24               THE CLERK:  Do you solemnly swear that the evidence

25     you shall give relative to the cause now under consideration
```

USA v. Alison Gu

```
 1   shall be the whole truth and nothing but the truth so help
 2   you God?
 3           SPECIAL AGENT STALLA:  Yes, sir.
 4           THE CLERK:  Please be seated, sir.
 5   (SPECIAL AGENT JEREMY STALLA, having been administered the
 6   oath to tell the whole truth and nothing but the truth,
 7   testifies as follows:)
 8   DIRECT EXAMINATION BY MICHAEL P. DRESCHER, ASST. UNITED
 9   STATES ATTORNEY:
10       Q.   Sir, where are you employed?
11       A.   I work for the U.S. Department of State doing like
12   security service.  My current duty station is St. Albans,
13   Vermont.
14       Q.   What is your position?
15       A.   I'm a Special Agent.
16       Q.   Are you the primary case agent involved in the
17   investigation leading to the prosecution of the Defendant
18   Ms. Gu?
19       A.   That's correct.
20       Q.   And you swore out at least one, I think more than
21   one, search warrant affidavits in connection with this
22   investigation?
23       A.   Yes.
24       Q.   I'm going to show you a series of exhibits and ask
25   you about them.
```

Motion To Revoke Conditions of Release - 4/3/2017                    USA v. Alison Gu

1          THE COURT:  Has Mr. McColgin seen those?

2     Q.   He has.  I have copies for Your Honor, as well.

3          I'm going to put in front of the witness Exhibit

4     1 and Exhibit 7.  Have you seen these documents before?

5     A.   Yes, sir.

6     Q.   Showing you Exhibit 7, can you tell us what that

7     is, please?

8     A.   This is an official complaint filed by the

9     Plaintiff Deborah Concepcion versus the Defendants Matthew

10    Able and I. Chen.

11    Q.   And in what court was this -- is that complaint

12    filed?

13    A.   This is a Brevard County 18th Judicial Circuit

14    Court.

15    Q.   Brevard County is located where?

16    A.   In Florida.

17    Q.   Did you obtain that document?

18    A.   Yes, I did.

19    Q.   And how did you go about obtaining it?

20    A.   I contacted the court clerk from Brevard County.

21    Q.   And did you give them a docket number, or what did

22    you give them?

23    A.   I gave them a docket number.

24    Q.   I'd like to show you Exhibit -- I turn your

25    attention now to Exhibit 1, and ask you, what is that

1   document, Exhibit 1?

2        A.   This is a transcript from the summary judgment in

3   the same case.

4        Q.   You said a "transcript of the summary judgment,"

5   you mean a transcript of the hearing?

6        A.   That's correct.

7        Q.   And the date of that hearing was what?

8        A.   August 16, 2016.

9        Q.   And did you obtain this document, that is, Exhibit

10  1?

11       A.   Yes, I did.

12       Q.   And how did you obtain that?

13       A.   From the clerk of court from Brevard County.

14       Q.   Now Exhibit 1 consists of approximately 12 or 13

15  pages of transcript, itself; is that right?

16       A.   That's true.

17       Q.   And then the final four pages of Exhibit 1 appear

18  to be exhibits, do they not?

19       A.   That's true.

20       Q.   And when you asked -- well, I guess let me ask

21  this, what is it that you asked the Brevard County Court for

22  that prompted them to give you that which has been marked as

23  Exhibit 1?

24       A.   I was contacted by the Plaintiff of this case,

25  Deborah Concepcion regarding this case.  She actually

1   provided me the first copy of this case -- of this summary

2   just to keep me in the loop of her case.  When I reviewed

3   the documents, I noticed that there was a seal used by I.J.

4   Chen (phonetic), and that's when I requested the official

5   copy from the court.

6       Q.   And so it was your request to the court that

7   prompted you to receive that which is marked as Exhibit 1?

8       A.   That's correct.

9       Q.   Now turning to the -- and you had a chance to

10  review the transcript that is Exhibit 1?

11      A.   Yes.

12      Q.   And is it fair to say that it is a transcript, the

13  first 12 pages are a transcript of the court hearing in the

14  case of Concepcion versus Able and Chen?

15      A.   Yes.

16      Q.   And that the final four pages, the exhibits,

17  consist of two pages of --

18          MR. MCCOLGIN:  Your Honor, I would object to

19  labeling these as exhibits.  There's no indication,

20  whatsoever, that these were exhibits, or that they were

21  introduced at the time of the hearing.  All we know is from

22  the agent that they appear to be attached to the transcript.

23  We don't know how they got attached to it.

24          And I don't believe there's any reference in the

25  transcript, itself, to attached exhibits.  So I would object

```
 1   to any reference to those four pages as being exhibits to

 2   that hearing.

 3           THE COURT:  Well, they haven't -- the Assistant

 4   United States Attorney hasn't offered them for admission, so

 5   I think this line of inquiry might be improper, at this

 6   point, without an offer of admission.

 7           MR. MCCOLGIN:  I would object on that ground, as

 8   well, Your Honor.

 9       Q.   I'm trying to authenticate and establish the

10   relevance of --

11           THE COURT:  Okay.

12       Q.   -- of the exhibits, Your Honor.

13           THE COURT:  The objection is overruled.

14       Q.   Setting the exhibit aside for a moment, you've had

15   a chance to talk to Ms. Concepcion, the Plaintiff in the

16   Florida lawsuit?

17       A.   Yes.

18       Q.   And is it correct that Ms. Concepcion was the

19   seller of a piece of real estate in Cocoa Beach, Florida?

20       A.   Yes.

21       Q.   And that the complaint that is Exhibit 7 identifies

22   the property as being on Cedar Avenue in Cocoa Beach?

23       A.   Yeah, 385 Cedar Avenue, Cocoa Beach, Florida.

24           THE COURT:  Mr. Drescher, your inquiry is leading

25   the witness to (unclear-voice lowered).  Do you think you
```

1    can (unclear)?

2        Q.   I will try to do so, Your Honor.  I was trying to

3    sort of -- in the interest of laying a foundation, but I

4    will -- I'll open it up a little bit.

5            What did Ms. Concepcion tell you about the

6    lawsuit?

7        A.   Essentially she told me there was an agreement --

8            MR. MCCOLGIN:  Objection, Your Honor.  The

9    statements of a litigant?  This is, first of all, hearsay.

10   I understand that hearsay could be admissible, but this is

11   hearsay coming from a litigant who has every incentive, in

12   fact a clear monetary incentive --

13           THE COURT:  Hm-hmm.

14           MR. MCCOLGIN:  -- to state things in a way perhaps

15   mostly that would benefit her position.  So I would object

16   to any hearsay statements from Ms. Concepcion.

17           THE COURT:  Okay.  The objection is overruled.

18   Hearsay is permissible in this action.

19           Mr. McColgin, I will view this testimony in a

20   proper light with the understanding that it's coming from a

21   litigant who has a motivation (unclear-voice lowered), but

22   it really goes to the weight of the evi -- to the motive to

23   the evidence.

24       Q.   In light of the objection, let me narrow the

25   question a little bit.  What did Ms. Concepcion tell you, if

1    anything, about the subject matter of the litigation?

2        A.   The case was in dispute of some furniture that was

3    agreed-upon to be sold, personal property in the house that

4    was agreed-upon between Ms. Concepcion and I. Chen and Matt

5    Able to purchase the personal property located in the

6    house.

7        Q.   The house -- when you say "the house," what do you

8    mean?

9        A.   The 385 Cedar Lane, Cocoa Beach, Florida.

10       Q.   When was the last time you spoke with Ms.

11   Concepcion?

12       A.   She sent me a message last week.

13       Q.   With regard to Exhibit 1, the transcript of the

14   hearing, do you have reason to believe that the person

15   identified in that transcript as "Ms. Chen" is the Defendant

16   Ms. Gu?

17       A.   Yes.

18       Q.   What, if any, connection does Ms. Gu have to the

19   property identi -- the Cedar Beach -- the Cedar Avenue

20   property, Cocoa Beach?

21       A.   I, during the course of my investigation, I

22   uncovered that I. Chen and Matthew Able committed bank fraud

23   in order to receive funds in order to purchase this property

24   in Cocoa Beach, Florida.

25            MR. MCCOLGIN:  Your Honor, these are all conclusory

```
 1   statements that actually go to allegations in the indictment

 2   that are very much in dispute.  I would object to this

 3   coming in as testimony.

 4           THE COURT:  I think the agent has expressed an

 5   opinion; it is what it is, it's his opinion.

 6           MR. MCCOLGIN:  Very well.

 7      Q.  Is "I. Chen" a name that is associated with the

 8   Defendant Ms. Gu?

 9      A.  Yes.

10           MR. MCCOLGIN:  Again, Your Honor, I object to his

11   expressing what appears, at this point, to simply be an

12   opinion.

13      Q.  I'm showing you what's been marked --

14           THE COURT:  Wait, I'll give you (unclear).

15      Q.  I'm sorry.

16           THE COURT:  What do you say to the Defendant?

17      Q.  I will withdraw the question for now, I will ask

18   a -- I'm going to show the witness some exhibits, too,

19   perhaps make the question less objectionable.

20           THE COURT:  Mr. Drescher, I assume you are no

21   relation to the Lois Drescher who's the court -- the court

22   order in this case?

23      Q.  That is an accurate assumption, so far as I know --

24   so far as I'm aware, Your Honor.

25           Showing you what's been marked as Exhibit 4.  What
```

1   is Exhibit 4?

2        A.   These are credit cards and bank cards that we

3   seized during the search warrant of 7 Edith Place, which

4   have the names "I. Chen," "Jing Chow," (phonetic), "I. Jen

5   Chen," (phonetic), "I.J. Chen," (phonetic), "I. Chen."

6   These were discovered in Ms. Gu's wallet located inside of

7   her purse.

8        Q.   A couple of follow-up questions.  You said "these

9   were discovered in Ms. Gu's wallet inside of her purse."

10  When were they discovered?

11       A.   During the execution of the search warrant.

12       Q.   And was the search of where, or of what?

13       A.   It was the search warrant of her property at 7

14  Edith Place, Cheshire, Connecticut.

15       Q.   I move the admission of Exhibit 4, Your Honor.

16            THE COURT:  Any objection?

17            MR. MCCOLGIN:  I object, Your Honor.  If I may

18  inquire of the witness?

19            THE COURT:  Sure.

20  VOIR DIRE EXAMINATION BY DAVID L. MCCOLGIN, ASST. FEDERAL

21  PUBLIC DEFENDER:

22       Q.   In Exhibit 4 -- indicates at the top that these

23  items were found in the master bathroom, correct?

24       A.   You're correct.

25       Q.   On top of the sink within a make-up bag.

1     A.   Yes, I'm sorry, I misspoke, you are correct.

2     Q.   So they were not found on Ms. Gu.

3     A.   They were found in her residence, you're correct.

4     Q.   They were found in a --

5     A.   I apologize.

6     Q.   -- residence also shared by Mr. Able.

7     A.   That's correct.

8          MR. MCCOLGIN:  Your Honor, I object on relevance

9     grounds.

10         THE COURT:  Mr. Drescher.

11         MR. DRESCHER:  I think the identity of the person

12    who participated in a hearing, in the Brevard County action

13    that is Exhibit 1, is relevant to establishing whether

14    there's probable cause for a violation of section 1017.  The

15    fact that credit cards were found in the Defendant's

16    residence by the name of "I.J. Chen" (phonetic) certainly is

17    relevant to establishing whether that is a name she used.

18         THE COURT:  I agree.  The Government has

19    essentially established that the "I. Chen," who is reflected

20    in this transcript from Brevard County, is the same

21    individual who was charged in this court, and I think the

22    evidence is filed with the court, and 4 is admitted.

23    BY MR. DRESCHER:

24    Q.   Showing you now what has been marked as Exhibit 5.

25    Is it correct that Exhibit 5 is a page from the power point

1    presentation that you've prepared?

2         A.   Yes, it is.

3         Q.   I'm going to draw your attention to the left side

4    of Exhibit 5.  It appears to be a New Hampshire photo ID; is

5    that correct?

6         A.   That's correct.

7         Q.   And did you obtain that photo ID?

8         A.   Yes, I did -- well, I mean I received -- this came

9    from the Department of Motor Vehicles of New Hampshire, but

10   we never located the actual physical ID.

11        Q.   The New Hampshire DMV sent you a copy of this ID?

12        A.   That's correct.

13        Q.   Did you investigate with the help of the New

14   Hampshire DMV as to how this identification was generated?

15        A.   Yes, I did.

16        Q.   Can you explain to the court how you went about --

17   or what your investigation revealed relative to the

18   generation of the "I.J. Chen" New Hampshire identification

19   card?

20        A.   We were able to determine that a state of Florida

21   certificate of birth was used which was in the name of "Hoa

22   Win," (phonetic).  That document was accompanied by a

23   Montgomery County, Alabama Court Order and certificate of

24   name change from "Hoa Win" to "I.J. Chen."

25             In addition, a Social Security card was provided,

1   number 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 in the name of "I.J. Chen" issued

2   December 3rd, 2014, as well as a Johnson State College ID

3   card issued in 2015 to "I.J. Chen."  Those were the

4   documents used at the time of application to obtain this

5   document -- this driver's -- nondriver ID card.

6       Q.   With regard to the Montgomery County, Alabama Court

7   Order purporting to change the name of "Win" to "Chen," this

8   was a document that had been provided to the DMV?

9       A.   Yes.

10      Q.   And did you do anything to check on whether that

11  was a real document?

12      A.   Yes, we contacted --

13           THE COURT:  What is the "real document"?

14      Q.   The Alabama Court Order changing the name from

15  "Win" to "Chen."  What did you do to check on whether that

16  was a real document?

17      A.   We contacted the Montgomery County, Alabama Court

18  for a second time because we had contacted them for the Gu

19  identity, as well, and again, they informed us that the

20  document was fraudulent; that the numbering scheme on the

21  document didn't match their numbering scheme; that the --

22  that there was no record of a name change from "Win" to

23  "Chen" on any date; that the statute cited on the document

24  was not a statute in Alabama, and so forth.

25      Q.   Did the document purport to have a court seal?

1    A.    Yes.

2    Q.    I'm showing you what's been marked as Exhibit 6.

3  What is Exhibit 6?

4    A.    The top part of the photo shows one of three notary

5  stamps that we found.  This is the actual machine that is

6  used to press a notary stamp or a court stamp, we found

7  three of those.  Below it is a gold seal showing what the

8  stamp looks like.  We also -- we found a number of those

9  blank gold seals at the residence, as well.

10    Q.    The item that is depicted in Exhibit 6, have you

11  seen that item physically with your own eyes?

12    A.    Yes, I have.

13    Q.    And where did you encounter that item?

14    A.    It was found in the kitchen, in a counter.

15    Q.    Where?  Where?

16    A.    7 Edith Place in the kitchen.

17    Q.    You said "7 Edith Place"?

18    A.    That's correct, in Cheshire, Connecticut.

19    Q.    And who lives there -- or who lived there?

20    A.    Ms. Gu, Matthew Able and their children -- and her

21  children.

22    Q.    Did you have a search warrant to search that

23  residence?

24    A.    Yes, I did, yes.

25    Q.    The seal that is created by the item on Exhibit 6,

Motion To Revoke Conditions of Release - 4/3/2017                    USA v. Alison Gu

Page 17

```
1    how does that compare to the seal that was on the
2    name-change document from the Alabama Court that changed the
3    name -- purportedly changed the name from "Win" to "Chen"
4    that you mentioned earlier?
5        A.    It appears to be the exact same.
6        Q.    During the course of your investigation, did you
7    come upon a Social Security number that was originally
8    issued to the person named "Wo T. Win" (phonetic)?
9        A.    Yes.
10       Q.    And based upon your investigation, was that Social
11   Security number used in the -- in -- let me withdraw that
12   question for a moment, please.
13            And what, if anything, did you do relative to that
14   Social Security number with regard to your investigation in
15   this matter?
16       A.    I confirmed that the Social Security was issued at
17   the time -- or near the time of birth to "Ho Win"
18   (phonetic), and that Ho Win had subsequently died in
19   California.  I also confirmed with the Social Security
20   Administration that Social Security numbers are never
21   reissued after the time of death to any person.
22       Q.    Did you use that Social Security number to pursue
23   any financial investigation?
24       A.    Yes, I did.
25       Q.    And can you briefly summarize what that
```

```
 1   investigation turned up -- was that Social Security number
 2   used and recently?
 3        A.   Yes, the "I.J. Chen" using the birth certificate
 4   and -- the birth date and the Social Security number of Ho
 5   Win applied for multiple bank loan -- applied for and
 6   received multiple bank loans and purchased several
 7   properties.
 8             THE COURT:  Who was the applicant?
 9        A.   The applicant was -- for the bank --
10             THE COURT:  For the bank loan for the property
11   purchased, who's --
12        A.   I.J. Chen, Your Honor.
13        Q.   Now the original "Wo P. Win" (phonetic), did your
14   investigation turn up whatever happened to that person?
15        A.   The person died in the state of California.  As a
16   child.  I don't have the exact date of death in front of me,
17   but she died as a young child.
18        Q.   I move the admission of Exhibit 5.
19             THE COURT:  5, being the --
20        Q.   The power point presentation that includes the
21   driver's license.
22             MR. MCCOLGIN:  Your Honor, I object on relevance
23   grounds, I don't think there's a sufficient connection here.
24             THE COURT:  Well, I think the Government is
25   offering this to show that the "I. Chen" who was referenced
```

1    in the Brevard County civil action is the "I. Chen" or the

2    individual charged in this court, so the court will admit 5

3    for that reason.

4        Q.   Agent Stalla, have you had occasion to compare the

5    photograph of the New Hampshire "I. Chen" ID that is Exhibit

6    5 to the Defendant in this case?

7        A.   Yes.

8        Q.   And what, if any, conclusions have you drawn?

9            MR. MCCOLGIN:  Your Honor, I would object to this.

10   I mean I think the court can look at the photo, it's a

11   blurry photo, I don't think that we -- I don't think he's

12   particularly expert in identification from a photo.

13           THE COURT:  Well, I'm not sure it takes an expert.

14   It's lay testimony, I'll take the answer.

15       A.   So what was interesting with the photo, Your

16   Honor, --

17           THE COURT:  Answer the question.

18       Q.   Try to narrow the-- the question was pretty narrow.

19           By comparing the photo that is on Exhibit 5 to the

20   Defendant in this action, what, if any, conclusions have you

21   drawn?

22       A.   It appears to be the same person, to me.

23       Q.   Have I moved the admission of Exhibit 6?  If not, I

24   move the admission of Exhibit 6, as well.

25           THE COURT:  Any objection?

```
 1           MR. MCCOLGIN:  I object just on general relevance
 2    grounds, Your Honor.
 3           THE COURT:  I have one question of the witness.
 4    These gold stamps which state "Probate Court Montgomery
 5    County," were these with the device?
 6       A.   Yes, sir.
 7           THE COURT:  6 is admitted.
 8       Q.   Your Honor, as I try to continue to establish the
 9    relevance of the exhibits, Exhibit 1, in particular, I would
10    ask Your Honor to take judicial notice of Document 100 in
11    this court's docket, which I'm handing up.  I've highlighted
12    on the page I've handed to Your Honor.
13           This is a motion that was filed by Ms. Gu in recent
14    weeks seeking permission to travel, where it was specified
15    that she would be residing at the address in Cocoa Beach
16    that is referenced in the complaint that is Exhibit 7.  I
17    would ask Your Honor to take notice of that as an admission
18    of the Defendant.
19           THE COURT:  Any objection?
20           MR. MCCOLGIN:  No objection, Your Honor.
21           THE COURT:  The court will take notice of the fact
22    that the Defendant's motion for the permission to travel to
23    Cocoa Beach referenced the same address that is the subject
24    of the civil action in Brevard County.
25       Q.   When you spoke with Ms. Concepcion last week, what,
```

1    if anything, did she say to you about recently having seen

2    Ms. Chen?

3        A.    She told me that Ms. Chen was at the 385 Cedar

4    Lane, Cocoa Beach, Florida address, and that a number of

5    building materials had just been dropped off at the

6    residence.

7        Q.    Your Honor, I move the admission of Exhibit 7.  I

8    believe its relevance has been established to -- by virtue

9    of the fact there's litigation over the recent sale of the

10   Cocoa Beach property naming, among its Defendants, an "I.

11   Chen," and the connection of that address and our

12   Defendant -- and that name and our Defendant have been

13   established, such that Exhibit 1, which is a hearing

14   transcript relative to that litigation, which is really the

15   heart of our argument, can be put into context.

16              THE COURT:  Mr. McColgin, I take it with the

17   Government's offer, that they have offered 7 for admission

18   for the limited purpose to show that there is a civil action

19   pending in Brevard County.  I'm not going to take into

20   account anything set forth in the complaint, other than that

21   there is a civil action pending concerning this real

22   property.

23              MR. MCCOLGIN:  For those purposes, we have no

24   objection, Your Honor.

25              THE COURT:  So admitted.

1      Q.   With regard to Exhibit 1, Agent Stalla, and with

2   Your Honor's permission, I intend to lead just a couple of

3   short questions here, I think we've already covered it, but

4   just for the train of thought, and should there be an

5   objection, I'll refrain.

6           Exhibit 1 consists of a transcript and four

7   additional pages; is that correct?

8      A.   Yes.

9      Q.   And you obtained these from the same Brevard County

10   Court in which the complaint that is Exhibit 7 was filed,

11   correct?

12      A.   That's correct.

13      Q.   And the docket number or the hearing that is

14   Exhibit 1 is the same as the complaint; is that correct?

15      A.   That's correct.

16      Q.   And during the course of the transcript portion of

17   Exhibit 1, there is at least one, perhaps more than one

18   statement attributed to a Ms. Chen; is that correct?

19      A.   That's correct.

20      Q.   And among the materials that are -- that were

21   provided to you by the court that are also in Exhibit 1,

22   there are also two pages of -- relating to a notarization of

23   a document purporting to have been signed by a Ms. Chen; is

24   that correct?

25      A.   That's correct.

1      Q.    Your Honor, I intend to get into the substance of

2   Exhibit 1 a little bit more, but at this point, I think its

3   relevance has been established and authenticity for our

4   purposes has been established under the admission of Exhibit

5   1.

6           THE COURT:  Objection?

7           MR. MCCOLGIN:  Your Honor, I object on the grounds

8   that we simply don't know why these documents were attached.

9   Again, they are not referred to in the transcript.  There's

10  no reference to exhibits or exhibits being attached.

11  There's nothing on the papers indicating, in and of

12  themselves, that they are in fact exhibits or that they

13  would be introduced as part of any hearing.

14          The only thing that we have is the last page

15  appears to be a U.S. Postal Service receipt, indicating that

16  a Matthew Able sent these to Scott Lieberman, who I believe

17  is the attorney for the Plaintiff.  Brett Hyde -- yeah,

18  Scott Lieberman and Brett Hyde.  Brett Hyde is the attorney

19  for the complainant.  So we don't know who submitted these,

20  why they were submitted.  Given that we don't know the

21  origin of these documents, I would object to them being

22  admitted.

23          THE COURT:  Well, in the transcript, Ms. Chen

24  argues before the court asking why her response -- or

25  Mr. Able's response and her response to the motion for

1    summary judgment was not considered by the court.  These

2    documents at issue were labeled as declaration in support or

3    response to summary judgment.  They bear the court's docket

4    numbers, they bear the court's case number.  It appears that

5    these were filed by the defendants in the civil action, and

6    accordingly they are admitted.

7         Q.    Agent Stalla, I'd like to draw your attention to

8    the third to last and second to the last pages of Exhibit 1,

9    please.  Do you see the third to last page?

10        A.    Yes.

11        Q.    It has the title Certificate of Acknowledgment of

12   Execution of an Instrument?

13        A.    I do.

14        Q.    Actually, before I ask you about this specific

15   page, during your course of your career work in the State

16   Department, have you been stationed outside of your current

17   duty station?

18        A.    Yes, sir.

19        Q.    Fair to say you've been around the world?

20        A.    I've served at three U.S. Embassies.

21        Q.    And is it -- do United States Embassies provide

22   notarization services to persons who may have business to

23   conduct in the United States?

24        A.    Yes, they do.

25        Q.    The page that we have just identified on Exhibit 1,

1    Certificate of Acknowledge of Execution of an Instrument,

2    can you describe what that is, please?

3        A.   Well, this is a document that was prepared by

4    the -- purportedly prepared by the U.S. Embassy in

5    Singapore, and it lists the vice consul who is performing

6    the notary service.

7        Q.   And the date?

8        A.   August 5th, 2016.

9        Q.   And the following page.

10       A.   The following page is something that was prepared

11   that, I believe, by the person asking for the notary, in

12   this case, I. Chen.  Essentially asking to sign this in

13   front of the notary and get it notarized.

14       Q.   Have you -- do you recognize the name of the person

15   who appears to have notarized and signed the two pages we've

16   talked about?

17       A.   I didn't recognize the name, but I was able to look

18   up the name in our -- in our global e-mail system.

19       Q.   That's Andrew Aylward (phonetic); is that

20   correct?

21       A.   I believe that's how you say it, yes.

22            THE COURT:  I can't hear you.

23       A.   I believe so.  I believe that's the way to

24   pronounce it, Andrew Aylward.

25       Q.   Did you show Mr. Aylward copies of the two pages

1    we've just been talking about?

2        A.   Yes, I sent him a copy.

3        Q.   And why did you do that?

4        A.   I was trying to see if he could verify the

5    authenticity of the seal and his signature.

6        Q.   What did he say?

7        A.   He said that it appeared to look like his

8    signature.  As for the notary stamp, it was hard for him to

9    tell because it wasn't an original notary stamp.

10           THE COURT:  Which page are you referencing now?

11       A.   The third -- third to the last, the Certificate of

12   Acknowledgment of Execution of an Instrument.

13           THE COURT:  Tell me again what he said.

14       A.   He told me that it did appear to look like his

15   signature, and the stamp appeared to look like a seal of the

16   U.S. Department of State, but because it was a photocopy,

17   you know, and it's not the embossed, raised seal, he was

18   unable to say if that was an authentic seal or not.

19       Q.   Fair to say he thought the copy looked legit?

20       A.   Yes.

21       Q.   Did you inquire as to Mr. Aylward as to whether he

22   in fact executed these documents?

23       A.   I did.

24       Q.   And what did he say?

25       A.   He said he was -- he provided me a list of

1    everybody that came in for notarial services on August 5th,

2    2016, and there was nobody by the name of "I.J. Chen,"

3    "Alison Gu," "Maddy Woo," (phonetic), that came in and paid

4    for notarial services on that date.

5        Q.    Did Mr. Aylward indicate to you whether he would've

6    expected to be a record of him having provided notarial

7    services?

8        A.    He expected that there would be a record.

9        Q.    If he had in fact done so.

10       A.    Yes.

11       Q.    If I could have just a minute, Your Honor.

12             Nothing further.

13   CROSS EXAMINATION BY DAVID L. MCCOLGIN, ASST. FEDERAL PUBLIC

14   DEFENDER:

15       Q.    Agent, I'd like to start right where we left off

16   with the direct examination regarding the certificate of

17   acknowledgment from Singapore.  You indicated that the

18   notary, Mr. Aylward, said that this document was not on his

19   list of notarized documents for August 5th, 2016; is that

20   correct?

21       A.    Not the document, itself, but the -- he provided

22   the name of people who came in for notarial services on that

23   date, and the name "I. Chen" was not on that list.  He

24   didn't have a record of the actual document that was

25   notarized.

1    Q.   So he keeps a list of names of people who have
2    received a notary, received a document notarized; is that
3    correct?
4    A.   He keeps a list of people that came in for
5    services, consular services for each day that he's providing
6    those services.
7    Q.   You did not ask him to check on August 4th, or 3rd,
8    or the 6th or 7th, correct, to see if that name appeared on
9    a list?
10   A.   I asked him for August 5th.
11   Q.   You only asked him for August 5th.
12   A.   Yes.
13   Q.   Regarding the hearing for which there's a
14   transcript, Government Exhibit 1, from August 16th, 2016, of
15   course you were not present for that hearing, correct?
16   A.   That's correct.
17   Q.   And the parties for that hearing appeared by
18   telephone; is that correct?
19   A.   I believe so, yes.
20   Q.   Insofar as you know, no one has listened to the
21   tape of that hearing in order to make any sort of voice
22   identification of the person who identifies herself as "Ms.
23   Chen," correct?
24   A.   As far as I know, that's correct, yes.
25   Q.   And the person who identifies herself as "Ms. Chen"

```
1    never identifies herself as "Alison Gu" during that
2    transcript, correct?
3         A.   Correct.
4         Q.   Now the attachments, which the Government is
5    calling exhibits to Government Exhibit 1, the last page
6    consists of a U.S. Postal Service receipt; is that right?
7         A.   That's correct.
8         Q.   So it would appear that those documents were sent
9    pursuant to that particular postal receipt; is that a fair
10   interpretation?
11        A.   I believe, yes, that's fair.
12        Q.   And a postal receipt indicates that the documents
13   were sent by Matthew Able.
14        A.   Correct.
15        Q.   There's no indication on that postal receipt that
16   they were sent by Alison Gu, correct?
17        A.   Correct.
18             THE COURT:  Mr. McColgin, I misunderstood your
19   initial objection, I -- in -- well-taken that these are not
20   exhibits to the transcript, these are court documents
21   related to the civil action.  You're correct in your
22   objection that these are not exhibits to the transcript.
23        Q.   Thank you, Your Honor.  I have no further
24   questions, Your Honor.
25             THE COURT:  Anything further?
```

```
 1    REDIRECT EXAMINATION BY MICHAEL P. DRESCHER, ASST. UNITED
 2    STATES ATTORNEY:
 3        Q.   Do you know who Matthew Able is?
 4        A.   Yes, I do.
 5        Q.   Who is he?
 6        A.   He has a relationship with Ms. Gu,
 7    boyfriend-girlfriend type relationship.
 8        Q.   So far as you know, do they live together?
 9        A.   Up until recently I believe they had been living
10    together in Cheshire, Connecticut.  I believe Ms. Gu now
11    lives in Windhall, Vermont.
12        Q.   Do you have a sense for how long Ms. Gu and
13    Mr. Able have been together?
14        A.   Multiple years, at least since 2015.
15        Q.   Nothing further.
16             THE COURT:  Okay, you're excused.
17        A.   Thank you.
18             THE COURT:  Does the Government have any additional
19    evidence to present?
20             MR. DRESCHER:  We do not, Your Honor.
21             THE COURT:  Does the Government rest?
22             MR. DRESCHER:  It does.
23             THE COURT:  Mr. McColgin, do you wish to present
24    any evidence, or do you wish to rely on argument?
25             MR. MCCOLGIN:  Wish to rely on argument, Your
```

1    Honor.

2              THE COURT:  Mr. Drescher.

3              MR. DRESCHER:  Your Honor, the issue before the

4    court is whether there's probable cause to conclude that Ms.

5    Gu has violated section 1017 of Title 18 in connection with

6    the -- the pages relating to the Singapore notarization, or

7    what appear to be a Singapore notarization that is part of

8    Exhibit 1.  I'll note at the outset, that while those

9    documents do not appear -- Your Honor is correct, in that

10   the transcript of -- that is Exhibit 1 do not make reference

11   to those documents as exhibits.

12             The transcript that is Exhibit 1 include several

13   admissions by both Mr. Able and Ms. Chen, Ms. Gu, that they

14   had prepared affidavits; that they had tried to mail them

15   in; that they had a mailing receipt for them dated August

16   10th, and that the content of that transcript should provide

17   the -- in addition to the other connections between Ms. Gu

18   and the Cocoa Beach property, the litigation and the Cocoa

19   Beach property, and -- and that the content of the

20   transcript makes reference to Ms. Chen and Mr. Able having

21   prepared notarization, that these were prepared by them.

22             In order to violate section 1017, it's not

23   necessary that the document actually was treated as an

24   exhibit in court, but merely, that Ms. Chen -- Ms. Gu,

25   rather, procured or transferred a document to which was

 1    affixed the seal of an agency of the United States, and that

 2    she knew that the seal had been fraudulently-affixed.  I

 3    think the fact that there is no evidence of Ms. Gu having

 4    been in Singapore in August of this year -- of last year,

 5    rather, in fact had she been in Singapore of August of last

 6    year, that would have been in violation of her conditions --

 7            THE COURT:  Isn't the certification evidence of her

 8    being in Singapore?

 9            MR. DRESCHER:  In some circum -- if she wishes to

10    argue that she was in Singapore on August 5th, I suppose it

11    could be self-authenticating in that regard.

12            THE COURT:  Well, she doesn't have any burden here

13    to make any arguments.

14            MR. DRESCHER:  But my -- by virtue of the fact that

15    there is zero evidence maintained by Mr. Aylward regarding

16    his provision of notarization services on August 5th, by

17    virtue of the fact that Ms. Gu would not have been permitted

18    to have traveled on August 5th, it is -- I believe there is

19    sufficient evidence for the court to find probable cause

20    that Ms. Gu prepared and used the document that are the

21    second and third to last pages of Exhibit 1 in violation of

22    section 1017.

23            THE COURT:  One has to wonder, what is the purpose

24    of this document?

25            MR. DRESCHER:  The review of the transcript

```
 1    suggests that Ms. Gu and Mr. Able were under a misimpression
 2    with regard to how to avoid the entry of summary judgment
 3    against them in connection with the litigation.  The
 4    litigation itself was a dispute over whether Ms. Gu, known
 5    to the seller as "Ms. Chen and Mr. Able," were obligated to
 6    pay for the personal property, furniture that was present at
 7    the Cocoa Beach property, and that was the substance of
 8    the -- of the --
 9          THE COURT:  That's the allegation.
10          MR. DRESCHER:  -- of the litigation, that was the
11    allegation.  And that the Plaintiff in that case, who was
12    represented, appears to have filed a summary judgment
13    motion.  And that I believe, if you look at the content of
14    the two affidavits that Ms. Gu and Mr. Able were trying to
15    put in front of the court, they seem to have been under the
16    misimpression that if they just sort of asserted that they
17    had information to provide, that that would somehow
18    establish the -- the entry of summary judgment would not be
19    appropriate.  And the content of the transcript itself makes
20    clear that that's what they understood it to be.
21          THE COURT:  But again, what's -- I don't understand
22    it, it's just pure conjecture to make this inquiry.  What's
23    the purpose of this certificate of acknowledgment in the
24    larger context of the civil lawsuit?  What relevance is it?
25          MR. DRESCHER:  If the -- as evidence of -- as I
```

1    will call it, my assertion is that it's fake evidence of

2    notarization.  If something -- if a notarized statement or

3    an affidavit was necessary to avoid probable cause, there

4    would be -- it would be a necessary condition of what -- it

5    would be necessary to provide that in order to avoid

6    probable cause.

7            Now given the timing and other procedural problems

8    in the context of that litigation, there are plenty -- there

9    appear to have been plenty of reasons why summary judgment

10   was entered against Mr. Gu (sic) and Ms. Able (sic).

11           THE COURT:  All right, so let's -- Mr. Drescher

12   seems to have focused only on the question of probable

13   cause, so Mr. McColgin, do you wish to address the question

14   of probable cause?

15           MR. MCCOLGIN:  Yes, Your Honor.  I don't believe

16   there is probable cause to believe there is a violation in

17   this case for multiple reasons.  First of all, the

18   Government hasn't shown that this document, whatever sort of

19   document we call it, not an exhibit, or whatever it is, the

20   document from Singapore, in fact is invalid.  The agent

21   testified that he did speak to the notary, Mr. Aylward.

22   There's no testimony that Mr. Aylward said, yeah, that's a

23   false document, he --

24           THE COURT:  You really wonder -- that would put

25   your client in Singapore.

```
 1            MR. MCCOLGIN:  That would put a Ms. I. Jen Chen
 2     (phonetic) in Singapore.  We, Your Honor, contend that
 3     that's not my client.  There's no evidence that that is my
 4     client.  So we have multiple layers here.
 5            First of all, one, there's no evidence that that is
 6     a false document that was filed, as the Government is
 7     claiming.  It could have simply been incorrectly dated, or
 8     maybe they didn't put this particular notarization on their
 9     list, who knows?  But there's no -- there's simply no
10     evidence that that is false.  Even if we assume it's false,
11     however, Your Honor, there's no evidence as to who the "I.J.
12     Chen" was who appeared on the phone with Mr. Able.  There's
13     no voice identification.  The "Chen" doesn't say "I am
14     Alison Gu."  There's simply no evidence as to who that
15     person was.
16            Thirdly, there's no evidence that it was my client
17     who submitted that document from Singapore.  It appears to
18     have been sent in by Matthew Able, not by my client.  We
19     have --
20            THE COURT:  She references the postal receipt where
21     she -- whoever A. Chen (phonetic) is in the argument
22     references a postal receipt and brings it to the attention
23     of the court that the documents were filed.  And there's
24     reliance on these documents by whoever "I. Chen" is in the
25     civil action.
```

1          MR. MCCOLGIN:  Well, in any event, Your Honor,

2     there's no evidence as to who that "I. Chen" was.  The

3     Government simply hasn't -- is unable to connect that up to

4     my client.  And the fact that there's a driver's license

5     from New Hampshire not found in my client's house or on my

6     client's person in the name of "I. Jen Chen" doesn't

7     indicate that that was my client who was involved in this

8     transcript.

9          And likewise the fact that even Mr. Able's house,

10    where my client was also living, there's these credit cards

11    in the name of "I. Jen Chen," again, that does not indicate

12    that it was my client who was claiming to be "I. Jen Chen."

13    So I think on multiple layers the Government has not

14    established probable cause to believe that my client

15    committed an offense.

16          MR. DRESCHER:  May I respond, briefly?

17          THE COURT:  Yes.

18          MR. DRESCHER:  So with regard to the identity of

19    "I. Chen," Your Honor has seen the driver's license that was

20    obtained, that has the Defendant's face on it in the name of

21    "I. Chen."  Your Honor has seen, I believe it's Exhibit 6,

22    which is the fake Alabama Probate Court seal that matches

23    the seal that was put on the fake document purporting to

24    change the name of the young woman long since deceased to

25    whom the Social Security number subsequently associated with

```
 1   "Chen" has -- was also found in her residence, along with
 2   credit cards in the name of "I. Chen" that was also found in
 3   her residence.
 4         Along with the fact, that as recently as last week,
 5   by virtue of the motion that was filed seeking the court's
 6   permission to travel, we know that this Defendant Ms. Gu, is
 7   associated with the very address in Cocoa Beach that the "I.
 8   Chen" and -- that somebody by the name of "I. Chen" was
 9   involved in litigation over back in -- last year in Florida.
10   The fact that this Defendant was in that location, the fact
11   that the credit cards and the probate seals were in this
12   Defendant's house, and that the use -- that the probate --
13   the Alabama probate seals were used in furtherance of the
14   scheme to get the driver's license that has "I. Chen's" name
15   on it, with her photograph on it, all strongly-suggest that
16   I. Chen and Ms. Gu are the same person, and that Ms. Gu and
17   the Cocoa Beach property are connected, as well.
18         THE COURT:  Well, let me ask you about 1017, Mr.
19   Drescher, 1017 focusing on the language that is relevant to
20   your argument based on "unlawful for anyone to fraudulently
21   or wrongfully use by, procure, or sell, or transfer to
22   another a certificate, instrument, or commission, which
23   bears a seal, which has been fraudulently-affixed or
24   impressed."  What is the evidence that this seal was
25   fraudulently-impressed or affixed?
```

1          MR. DRESCHER:  The fact that when the consul in

2     Singapore was asked whether they'd ever provided

3     notarization services on the date indicated to anybody by

4     the name of "I. Chen", or by any of her aliases, the answer

5     is no.

6          THE COURT:  Well, in connection with this matter,

7     the first task before the court is to determine whether or

8     not there is probable cause to believe that a violation of

9     18 U.S.C. Section 1017 has been committed.  And then if that

10    finding is made, the court will then proceed to invite

11    counsel to make argument on the second half of the section

12    3148 equation whether or not the Defendant would abide by

13    any condition of release.

14          The court has before it substantial evidence to

15    show that this Defendant Alison Gu is in fact the I. Chen,

16    who is the civil litigant pending in Brevard County.  That

17    evidence includes such things as the following:  The

18    Government has seized Visa cards from Ms. Gu's residence, in

19    which the name "I. Chen" is embossed on several of these

20    Visa cards.  The Government has presented evidence that the

21    investigator contacted the New Hampshire Department of Motor

22    Vehicles and ascertained that the individual who identified

23    herself as "I. Chen," who bears a substantial resemblance to

24    the Defendant Ms. Gu, filed an application for a New

25    Hampshire ID card, in which the applicant utilized a Florida

1    birth certificate in the name of "Ho T. Win," (phonetic).

2         The applicant also included a certificate

3    purportedly from a Montgomery, Alabama Probate Court

4    indicating a name change from "Ho D. Win," (phonetic), to

5    "I.J. Chen."  The investigator testified credibly that he

6    contacted the Alabama County Court, Probate Court in

7    Montgomery County, and was advised that the order or

8    certificate was fraudulent, and in fact the Government, in

9    the execution of its search warrant, seized a stamp bearing

10   the emboss of the Montgomery County, Alabama Probate Court.

11   That stamp was seized from the residence of this Defendant.

12   The officer ascertained that the Social Security card -- a

13   Social Security card was issued -- excuse me, was offered to

14   New Hampshire by the name of "I.J. Chen."

15        Moreover, the civil action in Brevard County

16   focuses upon a breach of contract arising from the sale of

17   385 Cedar Avenue in Cocoa Beach, Florida.  This Defendant,

18   herself, asked the court for permission to travel to 385

19   Cedar Avenue, Cocoa Beach, Florida in a recent filing before

20   this court.  I am persuaded that the "I. Chen" who is the

21   civil Defendant in the Brevard County action is indeed

22   Alison Gu, the indicted Defendant in this action.

23        Counsel argues that the evidence indicates that it

24   was Mr. Able who furnished these documents to the Brevard

25   County Court, these documents being the certificate of

Motion To Revoke Conditions of Release - 4/3/2017                USA v. Alison Gu

1  acknowledgment, as well as the declarations in response to

2  motions for summary judgment.  A review of the transcript

3  reveals that Ms. Chen makes specific reference to these

4  documents and relied upon them in her argument to the court.

5  It may have been Mr. Able who mailed these documents to the

6  court, but it's clear that Ms. Chen, also known as Ms. Gu,

7  used them in the course of her argument before the court and

8  therefore was well aware of their existence.

9          Quite frankly, I'm befuddled as to why the

10  certificate of acknowledgment had any relevance, whatsoever,

11  to the Defendant's response to the Plaintiff's motion for

12  summary judgment, but it is clear to me that Ms. Gu, Ms.

13  Chen submitted them to the court as part of her response,

14  and that these documents -- at least there is probable cause

15  to believe that these documents bear the embossed seal of

16  the United States.

17          With particular reference to the United States

18  Embassy in Singapore, I note that the applicated filed by I.

19  Chen bears the stamp of the Republic of Singapore, Embassy

20  of the United States, which corroborates the fact that the

21  certificate by the consular officer was used as part of the

22  same litigation.

23          I am persuaded that there is at least probable

24  cause to believe that Ms. Chen, also known as Ms. Gu, has

25  violated section 1017 of Title 18 of the United States Code.

1          At this time, let us proceed to the second half of

2     the equation involving 3148, which is to determine whether

3     there are any conditions Ms. Gu would abide by.

4          Mr. Drescher.

5          MR. DRESCHER:  Your Honor, I note that Ms. Gu is

6     currently subject to probation based upon a conviction in

7     New York State Court.  At the time, she engaged in the acts

8     that gave rise to the court's just-made finding of probable

9     cause.  She was subject to a condition of this court to

10    condition number 1 in her order of release to commit no

11    crimes.  It appears that while she is subject to the

12    supervision of multiple courts, there is evidence to

13    conclude she continues to commit a felony in the case of the

14    1017 violation.

15         Under those circumstances, I think it's appropriate

16    for the court to conclude, one, that Ms. Gu presents a

17    danger, in the sense that she doesn't seem to be able or

18    willing to comport her conduct to the law despite the fact

19    that she's under several court orders to do so.  And that

20    there's also -- it would also be reasonable to conclude that

21    she is unwilling or unable to abide by conditions imposed by

22    the court, and for those reasons, we think her release

23    should be revoked.

24         THE COURT:  Mr. McColgin.

25         MR. MCCOLGIN:  Your Honor, first of all, these

```
 1   allegations are very dated, this goes back to August of last
 2   year, and the Government had mentioned these allegations to
 3   me in I believe it was September or October when I met
 4   with -- it's a different prosecutor, but still, mentioned
 5   that to me.  The Government, at that time, saw no reason to
 6   believe that Ms. Gu was a danger to the community or a risk
 7   of flight.
 8          Approximately eight months has passed.  Now all of
 9   a sudden they're making this allegation.  I think the fact
10   that it's so dated, so much time has passed, in itself,
11   indicates that there's no indication that she is an ongoing
12   danger to the community.  The pre-trial services has not
13   moved that her conditions be revoked on this basis, they
14   were aware of them, as well.
15          Your Honor, Ms. Gu has very strong ties.  She is
16   currently living with three of her children in Windhall,
17   Vermont.  One of them is attending school there,
18   15-years-old, the other two are being home-schooled.
19          THE COURT:  By whom?
20          MR. MCCOLGIN:  By -- well, there's a -- she's
21   assisting in the home-schooling, and also there's computer
22   programs that are available, so for on-line home-schooling,
23   at this point.
24          So she spends most of her time, probably five days
25   of the week most weeks up in Windhall, Windhall, Vermont.
```

1    She does have some connections to some traveling down to

2    Connecticut, but most of her time is up here with her

3    children.  She clearly is not a risk of flight, Your Honor.

4    Approved to travel to Florida, she's back here today,

5    knowing full well that this is a detention hearing.  She's

6    clearly not a risk of flight.

7           Given that these allegations are so dated, I don't

8    think that there's a basis for saying that she is an ongoing

9    danger to the community.  Given her community ties and the

10   dated nature of these allegations, Your Honor, and the fact

11   that pre-trial services has not asked that her release be

12   revoked, I think it is appropriate that she be continued on

13   release.

14          THE COURT:  All right, well, in connection with

15   this matter, the court has entered revised conditions of

16   release that are fairly strict.  I accept Mr. McColgin's

17   argument that the offense conduct for which I found probable

18   cause did occur sometime ago, and the Government was well

19   aware of this conduct, it appears.  So that does not mean to

20   excuse the criminal conduct for which the court has found

21   probable cause, but I think the core of protecting

22   conditions of release would satisfy the requirement that the

23   court should set conditions of release where they would be

24   sufficient to address the safety of the community.

25          In connection with this matter, I'm going to revise

1    again the conditions of release.  I'm going to deny the

2    motion to vacate the order citing conditions of release.

3    I'm going to revise the existing conditions to include

4    electronic-monitoring.  I'm going to require that Ms. Gu

5    participate in the following location-monitoring component

6    and abide by its program rules and regulations.

7           I'm going to impose the requirement that Ms. Gu be

8    subject to home detention.  She is restricted to her

9    residence at all times, except for employment, education,

10   religious services, medical or substance abuse, mental

11   health treatment, attorney visits, court appearances,

12   court-ordered obligations and other activities approved by

13   the pre-trial service office.

14          I'm going to require her to submit to

15   location-monitoring as directed by the pre-trial service

16   office, and she is to pay all or part of the cost of the

17   program based on her ability to pay.  I'm going to add that

18   to the existing conditions, with the understanding that if

19   there are any violations, any further violations in the

20   conditions of release, Ms. Gu would be subject to the

21   issuance of an order of arrest, a warrant of arrest and an

22   order of detention.  That is the finding of the court.

23          I'll ask Mr. Jarvis to prepare these revised

24   conditions.  Any further argument?

25          MR. MCCOLGIN:  Nothing further, Your Honor.

1           I do have a question, which I should probably raise

2    now because it's going to come up, but Your Honor had

3    previously granted permission for Ms. Gu to travel to

4    Florida.  She's been going there, she indicates, in order to

5    help care for her father who's ill.

6           Would Your Honor entertain future requests to

7    travel to Florida, or would you take that on a case by case

8    basis?

9           THE COURT:  I'd take that up on a case by case

10   basis.

11          MR. MCCOLGIN:  Very well, Your Honor.

12          THE COURT:  Thank you.

13          MR. DRESCHER:  Thank you.

14          THE COURT:  Thank you.

15          MR. MCCOLGIN:  Thank you, Your Honor.

16          THE CLERK:  All rise.

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATE

 2           I, PAMELA MAYO HAMEL, hereby certify that the

 3      foregoing pages, numbered 3 through 45, inclusive, are a

 4      true, accurate and complete transcription, to the best of my

 5      ability, of a Recorded Motion to Revoke Conditions of

 6      Release, held on April 3, 2017, in the matter of UNITED

 7      STATES OF AMERICA V ALISON GU, File No. 2:16-cr-00084-1, at

 8      the U.S District Court for the District of Vermont,

 9      Burlington Div., 11 Elmwood Avenue, Burlington, Vermont.

10

11                                              

12

13      _____

14                      Pamela Mayo Hamel

15

16

17

18

19

20

21

22

23

24

25
```