UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>      v.<br><br>ALISON GU,<br>            Defendant. | Docket No. 2:16-cr-84 |

MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR NEW TRIAL

Defendant Alison Gu, by and through her attorneys, Langrock Sperry & Wool, LLP, hereby moves this honorable court for a Judgment of Acquittal pursuant to Fed R.Crim.P. 29, or in the alternative for a new trial pursuant to Fed.R.Crim.P. 33. As grounds for this Motion, Defendant states as set forth in the following Memorandum of Law.

Memorandum of Law

**I.      Legal Standard**

Under F.R.Cr.P. 29, the court is required to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." F.R.Cr.P. 29(a). In doing so, it must assess "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Writers & Research, Inc.*, 113 F.3d 8, 13 (2d Cir. 1997) (quotations omitted). "[A]ll reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *Id.* "[W]hen there is an innocent explanation for the defendant's conduct as well as one that suggests that the

defendant was engaged in wrongdoing, the Government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002). However, the "evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a "conviction must not be obtained simply 'by piling inference upon inference.'" *United States v. Valadez Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) (citation omitted). *See also United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) ("[A] conviction based on speculation and surmise alone cannot stand."). Although the government may rely on reasonable inferences from the evidence, those inferences must be reasonable, as opposed to speculative and conjectural. *See Galloway v. United States*, 319 U.S. 372, 395 (1943).

A motion for a new trial pursuant to F.R.Cr.P. 33 is assessed under a less exacting standard than a Rule 29 motion. The trial judge is required to independently weigh the evidence as if she were a juror, and grant a new trial "if the interest of justice so requires." In evaluating such a motion, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The court should grant the motion if there is a "real concern that an innocent person may have been convicted." *Id.*

### II.     Evidence as to Count 1

Count 1 alleged bank fraud in violation of 18 U.S.C. 1344(1). In support of that charge, the government introduced the testimony of numerous witnesses that false statements were made in connection with a series of mortgages. However, the evidence was insufficient to establish that the Defendant was the person responsible for those false statements.

With respect to the re-finance through Emigrant Mortgage of the house at 7 Edith Place in Cheshire, CT, the government presented testimony from Craig Thibeau at Northeast Financial (for a loan that never went through), and then from Karen Malek at Emigrant Mortgage. Mr. Thibeau testified that he understood the applicant to be a man named Aijen Chen, and his point of contact was "Aly," a person he communicated with only by email. The email address he used was alyramps@gmail.com; the government did not connect the "alyramps" address to Alison Gu. No forensic evidence was offered that the Defendant sent the emails in question.

The Emigrant refinancing loan did go through, with Aijen Chen and his wife, Jing Shao, as borrowers. Once again, all documentation was submitted to Emigrant by email, from accounts known as aijenchen@aol.com and truth1235@yahoo.com. There was no evidence offered, either forensic or otherwise, that Ms. Gu had ever used or had access to either of those accounts. The re-financing loan was closed by Jing Shao alone. A woman appeared and presented herself as Jing Shao, with a passport in that name. Christine Cetra, a paralegal who worked with the lawyer who closed the loan, testified that she met Jing Shao, copied her passport, and verified that the person who gave it to her was the same person on the photo. There is no dispute that the person who is pictured on the Jing Shao passport is not the Defendant. While the government presented evidence that the Jing Shao passport was itself a fraudulent document, that does not in any way alter the fact that someone other than Alison Gu apparently closed the Emigrant loan. Similarly, Lydia White in Florida notarized a loan closing document for Jing Shao in October 2015, who presented a Chinese passport. Presumably, the Jing Shao passport reviewed by Lydia White is the same one viewed by Christine Cetra, and presumably the person who appeared both times was the person whose

3

photo appears on that document – not Alison Gu. When Aijen Chen re-financed the Cheshire house a second time with Citizens Bank, an Asian man appeared and got the relevant documents notarized by Ergella Kulla in Connecticut

Evidence was offered regarding the purchase of a house in Yarmouth, Massachusetts. Senior loan officer Michael Tubin testified that he obtained documents by email in support of Matthew Abel's purchase and financing of the home. He said that he spoke with "Aly" and obtained documents from her, but again the government offered no forensic that the Defendant was the person either sending the emails or using the telephone. Although Mr. Tubin said he attended the closing and met "Aly," he did not identify Ms. Gu.

Lisa Souls, the loan officer for the Bank of Bennington, testified regarding the mortgage loan used to purchase a house in Dorset, Vermont. The only time she claims to have met the borrower, "Aijen Chen," was at closing. All information in support of the loan was provided to her by phone or email; once again, there was no evidence linking the Defendant to the email account, or demonstrating that she had sent the emails in question. While Ms. Souls describes a friendly closing with the borrower in September 2015, she did not identify Alison Gu as the person who appeared.

Finally, Gail Gilbert, who testified regarding the closing of the Cocoa Beach property, was also unable to identify Alison Gu as the person who attended closing as "Aijen Chen," despite the fact that Gilbert said she attended the closing and met the buyers, Chen and Abel.

The evidence fails to establish beyond a reasonable doubt that the Defendant was the person who was responsible for the submission of false or misleading information in connection with the various mortgagees, and accordingly a judgment of acquittal must be entered on Count 1.

Alternatively, the evidence was also insufficient to establish that Defendant had the requisite criminal intent to support a conviction for Count 1.  In a bank fraud prosecution, "[a]ctual or potential loss to the bank is… a description of the required criminal intent." *United States v. Barrett*, 178 F.3d 643, 647-648 (2d Cir. 1999) ("The well established elements of the crime of bank fraud are that the defendant …(2) possessed an intent to victimize the institution by exposing it to actual or potential loss"). There was no evidence at trial of any actual loss to any bank. To the contrary, there was significant evidence that there had *not* been any loss. For those banks that produced payment records related to the loans, including at least Prime Lending and Sunwest, the evidence was undisputed that all payments had been made timely and completely up through at least the production of the records. The Emigrant loan was closed upon having been paid off in full. Since a person is presumed to have intended the likely consequence of her actions, it logically follows that the fact that there was no loss to the banks is precisely what was intended. Absent proof of intended loss to the banks, a conviction for Count 1 cannot stand.

III.    **Evidence as to Counts 2 and 3**

Counts 2 and 3 alleged passport fraud in violation of 18 U.S.C. 1542 and aggravated identity theft in violation of 18 U.S.C. 1028A.

Passport specialist Manual Pacheco testified that a woman came into the passport office pursuant to an appointment and interacted with him for "about an hour." She presented an application for a U.S. passport and supporting documentation consisting of a New Hampshire driver's license, a social security card, and a student id, all in the name of "Ally Koo." She did not sign the application, and Pacheco testified that he did not administer the oath to her, because she "chose to withdraw" the application during the course of the

5

interview. He was unequivocal about the withdrawal of the application, and at several different points during his testimony he emphasized that the woman abandoned the application before he had an opportunity to make any decision on the documents. He did not see her again after that time, and there was no testimony that he (or anyone else) was contacted about pursuing the application.

Under these circumstances, the evidence was legally insufficient to support a conviction for either of Counts 2 or 3. The law requires not just that a false statement be made, but that it be in an "application." A person who fills out a passport application form with false information and leaves it in her desk drawer has clearly not committed a federal crime; it is not the form itself that is the "application," but rather the act of submitting for a determination on the merits. In this case, the person who presented the application at the St. Albans passport office did initially proffer the statement, but withdrew it without seeking action on it, before any action could be taken.

In the case of *Vana v. Attorney General of the United States*, the Third Circuit appears to have assumed that withdrawal of a passport application would preclude conviction for passport fraud, but found as a matter of fact that the claimant did not do so. 341 Fed.Appx. 836, 839 (3d Cir. 2009). In that case, Mr. Vana submitted an application for a U.S. passport, but "never called to make inquiries" about it and "never went back to pick up his passport.? *Id.*. Under those circumstances, the Third Circuit found that his "inaction was [in]sufficient to constitute a retraction." Similarly, in the case of *United States v. Luke*, the defendant claimed that he had tried to withdraw a fraudulent passport application, despite evidence that he had

6

"agitat[ed] to get the passport and left] the passport office only when it was clear he would not obtain it." 628 F.3d 114 (4th Cir. 2010).[1]

Both of those cases are factually distinct from this one. Here, the application was initially submitted but then clearly and permanently withdrawn. There was no further pursuit of the application, no inquiry as to its status, no re-submission, and no request for a decision. The application was withdrawn, accordingly to the passport agent, before he had sufficient information to make a decision one way or the other. Under these circumstances, the statements cannot be considered to have been part of an "application." Reasonable jurors could not conclude that proof beyond a reasonable doubt existed, and the court must grant a judge of acquittal on this basis.

In any event, the evidence at trial was insufficient to establish that it was Alison Gu who presented the materials at the passport office.  Although the agent said he interacted with the subject for about an hour, he did not identify the Defendant as the person he met. Apparently no out-of-court identification was ever attempted or made either. The video from the passport office does not clearly establish the identity of the applicant, and again Mr. Pacheco did not offer an opinion on that subject. The agent testified that the photograph that accompanied the form was not taken there at the office, so any third person could have brought the form with Ms. Gu's picture stapled to it. As a result, there was no direct evidence that the person at the passport office was Alison Gu.

The government presented circumstantial evidence in the form of the Ally Koo identification documents, which were apparently found in the house at 7 Edith Place, Cheshire, CT, where Ms. Gu lived with her boyfriend, Matthew Abel. They also presented

---

[1] The trial court however granted a motion for acquittal on a passport fraud charge under 18 U.S.C. §1542, *see* 628 F.3d at 117-118; the specific grounds for the judgment of acquittal on that count are not known.

7

evidence that the phone number listed on the passport application was the same phone number used in a number of the mortgage applications that formed the basis of Count 1. However, that circumstantial evidence did not suffice to prove beyond a reasonable doubt that the person at the passport office was Ms. Gu. The government did not offer any evidence about access to the house in Cheshire. While there was testimony that Ms. Gu and Mr. Abel lived at the house, there was no evidence that they (and Ms. Gu's children) were the only ones who lived there, or the only ones with access to it.

Taken all together in the light most favorable to the government, the circumstantial evidence is equally consistent with innocence as guilt and the conviction cannot be supported. A judgment of acquittal should be entered on Counts 2 and 3. Alternatively, the court should grant a new trial on those counts.

## Conclusion

For all the reasons set forth above, it is respectfully requested that this honorable court grant a judgment of acquittal on all counts; and alternatively that it grant the Defendant a new trial, and grant such other relief as it deems just and necessary.

DATED at Burlington, Vermont this 8th day of December, 2017.

LANGROCK SPERRY & WOOL, LLP

Lisa B. Shelkrot
PO Box 721, 210 College Street
Burlington, VT 05402
lshelkrot@langrock.com
Phone: (802) 864-0217

Attorneys for Defendant Alison Gu

710570.1