U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 FEB -1 PM 2: 04

CLERK

BY /s/ _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:16-cr-00084-1 |
| ALISON GU, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER DENYING DEFENDANT'S
MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL**
(Doc. 193)

Pending before the court are Defendant Alison Gu's motions for a judgment of acquittal and for a new trial. Defendant was charged in the Superseding Indictment with three Counts: Count One: bank fraud; Count Two: knowingly making a false statement in an application for a passport; and Count Three: aggravated identity theft. On November 7, 2017, a jury convicted Defendant of all three Counts. Defendant moved for a directed verdict of acquittal at the close of the government's case-in-chief and renewed that motion at the close of all evidence. Both motions were denied.

Pursuant to Fed. R. Crim. P. 29(c), Defendant seeks a judgment of acquittal notwithstanding the verdict, arguing that the government's evidence at trial was insufficient to support her conviction. In the alternative, Defendant moves for a new trial under Fed. R. Crim. P. 33(a) on the same basis. The government opposes both motions.

The government is represented by Assistant United States Attorneys Michael P. Drescher and Kevin Doyle. Defendant is represented by Paul A. Goldberger, Esq., Paul S. Volk, Esq., and Stacey Van Malden, Esq.[1]

I.  **Factual and Procedural Background.**

Over the course of six days of trial, the government called thirty witnesses and introduced 105 exhibits. In the light most favorable to the government, the evidence

---

[1] Lisa B. Shelkrot, Esq. represented Defendant at trial at the time of filing the pending motion.

established that Defendant committed bank fraud by submitting loan applications to financial institutions which contained materially false information, including the false identities of the loan applicants, false banking records, false appraisals, and false information regarding outstanding financial obligations, annual income, and a past bankruptcy petition, and the pendency of other loan applications. The following identities were employed as part of the scheme: Ally Koo, Ai J. Chen, Ai Jen Chen, Ai Chen, and Jing Shao. The purpose of the fraudulent scheme was to obtain financing for the purchase of certain real estate located at 7 Edith Place, Cheshire, Connecticut; 389 Read Farm Road, East Dorset, Vermont; 385 Cedar Avenue, Cocoa Beach, Florida; 184 South Sea Avenue, Unit 1, Yarmouth, Massachusetts; and 2406 Riverside Farms Road, Austin, Texas.

Numerous witnesses called by the government testified that financial institutions would not extend credit to a person whose identity they did not know. For example, Karen Malek from Emigrant Mortgage Company testified that knowledge of the identity of the loan applicant allows the lender to assess the applicant's ability to repay the loan. In her testimony, Defendant admitted that she had filed for bankruptcy protection under her real name, creating a credit risk of which financial institutions would be unaware if Defendant used a false identity in applying for loans.

In support of the passport fraud and aggravated identity theft Counts, the government called Manuel Pacheco, a passport officer employed by the United States passport office in St. Albans, Vermont on March 27, 2015. Mr. Pacheco testified that he had an approximately one-hour long interaction with an individual who submitted an application for a United States passport under the name of Ally Lynn Koo while also providing a false social security card, a false Johnson State College identification card, and a fraudulent New Hampshire driver's license with the name Ally Koo, but bearing Defendant's photograph. Each of these supporting items was later discovered in Defendant's Cheshire, Connecticut residence. Both the New Hampshire driver's license and social security card were obtained with forged Montgomery County Probate Court orders. Items related to these forgeries were also found in Defendant's house.

After reviewing the application and supporting documents, Mr. Pacheco asked the individual applicant to complete a supplemental questionnaire to further verify her identity. Upon completing and returning the supplemental questionnaire to Mr. Pacheco, the individual stated that she wanted to withdraw her application, and Mr. Pachego returned her supporting documents. The government presented video footage from the passport office's security camera which depicted this interaction. It further introduced the submitted passport application, which included Defendant's photograph, on behalf of applicant Ally Koo.

Defendant testified and called three witnesses. In the course of her testimony, she admitted that she and her partner, Matthew Abel, acquired four properties with their own money, but in someone else's name. Regarding the purchase of property in Cocoa Beach, Florida, for example, she testified:

> Q   So you admit that you purchased the house at 385 Cedar Avenue in Cocoa Beach, Florida? You admitted that earlier, right?
>
> A   I did not use my name to purchase the house, but I used the money that's mine to purchase the house, so --

(Doc. 202-1 at 92.)

Defendant further admitted purchasing the East Dorset, Vermont; Yarmouth, Massachusetts; and Austin, Texas properties that were the subject of the loan applications at issue in the case:

> Q   Did you purchase 385 Cedar Avenue, Cocoa Beach, Florida?
>
> A   Yes, that's one of the properties.
>
> Q   So you did purchase that?
>
> A   Yes. That's one of the properties.
>
> Q   Okay. Did you purchase 389 Read Farm Lane in East Dorset?
>
> A   That's also one of the properties that we investigated.
>
> Q   So the answer is yes?
>
> A   Yes.
>
> Q   Did you purchase the house in Yarmouth as well?
>
> A   Yes.

3

Q   And in Austin?

A   Correct.

Q   So you admit that all of those properties were purchased by you, or you and Matt, or Matt; is that fair?

A   Using the money, yes, we purchased those to make investment.

*Id.* at 72-73; *see also id.* at 49-50.

The loan applications submitted to lenders for the Cocoa Beach and East Dorset properties included a copy of a New Hampshire driver's license under the name of Ai Chen. Defendant admitted that the license bore her photograph. During the closing for the Cocoa Beach property, closing agent Gail Gilbert testified that she compared the image on the driver's license to the individual present to sign the closing paperwork and concluded they were the same person.

The loan application submitted to the Bank of Bennington to purchase the East Dorset property under the name Ai Jen Chen was the same name of the individual obligated to pay the mortgage to Emigrant Mortgage Co. secured by Defendant's Cheshire, Connecticut property. Defendant attended the foreclosure action for the East Dorset property and, on October 26, 2017, agreed to purchase the property.

Defendant admitted that she used the e-mail address "rampsfive@gmail[.com][,]" *id.* at 74, which was used to instruct the realtor for the East Dorset property to send future communications to "alyramps@gmail.com." The "alyramps" e-mail address was used to communicate with Craig Thibeau, a mortgage broker from Northeast Financial, and to send him a copy of a social security card in the name of Ai Chen.[2] The same social security card was used as supporting documentation to obtain the New Hampshire Driver's license bearing Defendant's photograph. Additionally, the government introduced an e-mail from the "alyramps" e-mail address ordering fraudulent Johnson State College identification cards, which were used to obtain some of the false

---

[2] The loan file held by Northeast Financial contained a Power of Attorney form purportedly notarized by Luz Simmons. A Luz Simmons notary stamp was discovered in Defendant's kitchen. The government's evidence established that this notary stamp was not legitimate.

4

identification at issue, and which were found in Defendant's bathroom. Defendant is thus mistaken in asserting that "the government did not connect the 'alyramps' [e-mail] address to Alison Gu." (Doc. 193 at 3.)

## II. Conclusions of Law and Analysis.

### A. Whether Acquittal is Warranted.

Defendant argues that the government's evidence at trial was insufficient for the jury to convict her of any of the Counts in the Superseding Indictment and that she is therefore entitled to a directed verdict of acquittal. "A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden.'" *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)). The test for sufficiency of the evidence is "whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008), *cert. denied* 555 U.S. 1148 (2009) (internal quotation marks omitted). It is permissible for the jury to have "base[d] its verdict entirely on inferences from circumstantial evidence, and the evidence need not have excluded every possible hypothesis of innocence." *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) (citation and internal quotation marks omitted).

The court may not grant a motion for acquittal if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this demanding standard, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

In considering the sufficiency of the evidence presented at trial, "the court must be careful to avoid usurping the role of the jury. . . . Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the

evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (internal citations and quotation marks omitted). The court must "resolve all inferences from the evidence and issues of credibility in favor of the verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000), *cert. denied sub nom Henderson v. United States*, 531 U.S. 909 (2000).

In order to prove Defendant guilty of bank fraud, the government needed to establish beyond a reasonable doubt "that defendant '(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss.'" *United States v. Crisci*, 273 F.3d 235, 239-40 (2d Cir. 2001) (quoting *United States v. Barrett*, 178 F.3d 643, 647-48 (2d Cir. 1999)). Defendant contends that the evidence was insufficient to establish that she was the person responsible for submitting false information to financial institutions and was insufficient to prove that she had the requisite criminal intent.

Regarding the challenged element of identity, Defendant admitted that she and her partner Matthew Abel acquired the properties at issue in someone else's name. Additional evidence established that the Ai Chen driver's license bearing Defendant's photograph was obtained with forged documentation from the Montgomery County Probate Court and that materials capable of fabricating these documents were discovered in Defendant's home. The Ai Chen driver's license was submitted as part of the loan applications for both the Cocoa Beach, Florida and East Dorset, Vermont properties. In the light most favorable to the government, a rational jury could conclude beyond a reasonable doubt that Defendant engaged in a fraudulent course of conduct designed to deceive a federally chartered or insured financial institution into extending certain loans.

As for the second challenged element of intent, Defendant argues that the government produced insufficient evidence that she intended to defraud the financial institutions because there was no evidence of actual loss by these entities. However, "[a]ctual or potential loss to the bank is not an element of the crime of bank fraud but merely a description of the required criminal intent." *United States v. Rigas*, 490 F.3d

6

208, 231 (2d Cir. 2007) (internal quotation marks omitted). The government produced evidence which demonstrated beyond a reasonable doubt that Defendant "intended to victimize the bank[s] by exposing [them] to loss[,]" *id.*, through numerous false statements in the loan applications which masked her identity and the credit risks she presented as a result of her prior bankruptcy, her assets, her sources of income, and her outstanding obligations. A jury could reasonably conclude that this constituted evidence beyond a reasonable doubt that she possessed the requisite criminal intent.

In moving for an acquittal on Counts Two and Three, Defendant asserts that the evidence did not show that she submitted an application for a United States passport as she "withdrew [the application] without seeking action on it[.]" (Doc. 193 at 6.) To convict Defendant of passport fraud, the government must establish that she made "any false statement in an application for [a] passport with [the] intent to induce or secure the issuance of a passport under the authority of the United States, either for [her] own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws[.]" 18 U.S.C. § 1542. In this case, Defendant concedes that the application, which contained false statements, "was initially submitted" when it was provided to the passport officer. (Doc. 193 at 7.) Defendant sought to withdraw her application only when the passport officer processing her application requested additional information. She demonstrated no intent in withdrawing her application prior to that request. The jury could reasonably conclude that the act of submitting the application manifested an intent to induce or secure the issuance of a passport under the authority of the United States.

In arguing that her initial submission but subsequent withdrawal of the passport application materials does not constitute an "application[,]" Defendant cites two cases that do not support her position. *Id.* (internal quotation marks omitted). In *Vana v. Attorney Gen. of U.S.*, 341 F. App'x 836 (3d Cir. 2009), the Third Circuit reviewed the denial of the defendant's request for adjustment of status pursuant to 8 U.S.C. § 1182(a)(6)(C)(ii) after the defendant pled guilty to a charge of making false statements on his passport application. The court did not decide whether "a timely retraction of a

7

false statement . . . was sufficient to constitute a retraction." *Id.* at 839. In *United States v. Luke*, 628 F.3d 114 (4th Cir. 2010), the Fourth Circuit affirmed a conviction for aggravated identity theft. Although the defendant claimed that he attempted to withdraw a fraudulent passport application, the evidence demonstrated that he "agitat[ed] to get the passport [approved] and le[ft] the passport office only when it was clear he would not obtain it." *Id.* at 116. Neither case supports Defendant's position that she did not provide an "application" with false statements to the passport office and consequently does not undermine the jury's verdict as to Counts Two and Three.

Defendant further contends that "the evidence was insufficient to establish that it was [Defendant] who presented the material at the passport office" because the video "does not clearly establish the identity of the applicant" and the passport officer who testified did not identify Defendant in court. (Doc. 193 at 7.) Arguments that the jury should have discredited evidence ask the court to consider modifying evidence, which is not permissible under Fed. R. Crim. P. 29. *See United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010), *cert. denied* 562 U.S. 950 (2010) ("'[C]hoices between competing inferences lie solely within the province of the jury" and the court must "defer to the jury's resolution of the weight of the evidence[.]") (citing *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997)). The government offered ample evidence that Defendant possessed the same false identification that was presented to the passport office, rendering it a reasonable inference that she was the applicant. Although of poor quality, the surveillance video was sufficient to support a conclusion that it depicts Defendant. The passport application was moreover closely tied to Defendant's fraudulent scheme and to a document retrieved from Defendant's computer advising as to how to obtain a false identity. A jury was free to draw reasonable inferences from this evidence and conclude that Defendant's identity for Count Three had been established beyond a reasonable doubt. *See Oguns*, 921 F.2d at 449 ("The jury may base its verdict entirely on inferences from circumstantial evidence, and the evidence need not have excluded every possible hypothesis of innocence.") (internal quotation marks and citation omitted).

For all three Counts, Defendant has not met her "heavy burden" to show that the evidence at trial was insufficient, *Matthews*, 20 F.3d at 548. Her motion for judgment of acquittal therefore must be DENIED.

## B. Whether Defendant is Entitled to a New Trial.

Alternatively, Defendant moves for a new trial. Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In deciding a Rule 33 motion, the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). "The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). The court must also "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury." *Id.* at 133 (internal quotation marks omitted). The court "generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility[.]" *Id.* "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

Ultimately, the court must determine "whether letting a guilty verdict stand would be a manifest injustice[.]" *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 400 (2014) (internal quotation marks omitted). While the court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," the court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414).

A new trial is reserved for those instances in which there is "a real concern that an innocent person may have been convicted." *Aguiar*, 737 F.3d at 264. Here, the government introduced ample evidence to support the jury's verdict on all three Counts and to dispel any concern that the jury's verdict was the product of manifest injustice. This case thus lacks the "extraordinary circumstances" that would support the court

9

usurping the jury's function. Because "'competent, satisfactory and sufficient evidence' in the record supports the jury verdict[,]" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414), Defendant's motion for a new trial must be DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion for judgment of acquittal and further DENIES Defendant's motion for a new trial. (Doc. 193.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1st day of February, 2018.

Christina Reiss, District Judge
United States District Court