P a g e  **1 | 11**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br><br>    v.<br><br>ALISON GU, AKA/ ALISON LING,<br>                    Defendant. | Docket No. 2:16-cr-84-1 |

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
## PURSUANT TO TITLE 18 U.S.C. §3583(e)(1)

According to Rule 32.1 (c) of the Federal Rules of Criminal Procedure and 18 U.S.C., Alison Gu wishes to terminate her supervised release. This petition is submitted to this honorable court to request the entry of an order terminating her supervised release with this respectful avers and motion.

### BACKGROUND

Gu was convicted on November 7, 2017, after a jury trial in the United States District Court for the District of Vermont. He was found guilty of violating 18 U.S.C. §1344(1) and 18 U.S.C. §1028(a)(1). After a complicated sequence of legal and factual events, which included a contested forfeiture proceeding, Gu was sentenced to 36 months of imprisonment by the Court on December 27, 2018.

In August 2022, while under the supervision of Vermont Federal Probation, Gu was convicted of violating her terms of supervised release in connection with exchanging a bad check and sentenced to 10 months in prison.

As of now, Gu has served nearly (40) months of the combined four-year supervised release term. Her supervised release term expires in August 2024. Considering the 10-month additional sentence served under much harsher conditions than federal supervision, she would have served all the punishment imposed by the court.

A more noteworthy fact is that Gu paid off her entire restitution imposed by the court soon after being released from BOP to home confinement in June 2023 (see Exhibit A).

## ARGUMENT

Under 18 U.S.C. § 3583(e)(1), the Court has the authority to grant early termination of a previously imposed term of supervised release. Section 3583(e)(1) provides:

> (e) Modification of condition or revocation. The court may, after considering the factors set forth in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. §3583(e)(1); see also Fed. R. Crim. Procedure 32.1(c)(1), (2)(B) & (C) (providing for hearings for modifications of supervised release, unless the result is favorable to the

person supervised and the government does not object after notice). Section 3583(e) directs the Court to consider the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7) in deciding whether to terminate a term of supervised release.

Upon filing this motion, Gu will have completed nearly 40 months of her 48-month supervision period, leaving her with less than a year left. Her conviction and the single count of violation are together being challenged by her Habeas Corpus 2255 Petition filed with this court, alleging ineffective defense counsel. As evidenced by the following facts supported by exhibits attached herewith, Gu meets most of the criteria for early termination:

1. STABLE COMMUNITY REINTEGRATION

After seeing how her own family dogs were able to provide significant health benefits to her disabled son, Gu began volunteering to run a holistic pet therapy program between 2020 and 2022. Her own research in holistic medicine and assisted animal therapy led her to raise and train a dozen small dogs to be emotional support animals.

Following her release from prison in August 2023, she has been contracted by a local religious organization to help them expand their health and wellness services (see Exhibit B).

While incarcerated, Gu spearheaded a not-for-profit social-tech initiative called IHAI. The first draft of IHAI's business plan blueprint was drafted using a typewriter inside

the Wyatt Detention Facility in 2019 (see Exhibit C).

Over two thousand pages of technical and business materials were produced to launch the global initiative (see Exhibit D and Exhibit U) after she was released from prison in 2020.

Gu continued to prepare business documents and proposals for the IHAI project from within the prison while serving a supervised release violation sentence in 2022, using a typewriter and hand-drawn sketches modeled after the real-life application in her Philadelphia FCI female cadet unit. Attorney Jonathan Edelstein received a copy of her complete work file sent to him from prison (see Exhibit E and Exhibit F).

2. PROGRESSIVE STRIDE TOWARD SUPERVISION OBJECTIVES AND IN COMPLIANCE WITH ALL CONDITIONS OF SUPERVISION

Aside from receiving nearly a dozen certificates of achievement during her prison sentences, she taught adult education classes to inmates and took correspondence courses at the post-graduate level during her time in prison (see Exhibit G).

Between 2018 and 2022, two of Gu's pending criminal charges resulted in dismissal (nolle pros) due to her diligent self-defense (see Exhibit H).

In the course of researching her case, she self-taught law inside the prison and

volunteered to assist inmates with filing grievances and drafting court motions, including drafting a 2255 petition for Abel upon his written request (see Exhibit I-1). To represent a voice for change, she wrote to the Wardens, RRC director, Chief US Probation Officer, and even Senator Maggie Hassan (See Exhibit I-2).

Upon her release, Gu completed the MIT Executive Education program, became certified as a traditional Chinese medicine (TCM) Tui Na practitioner after over fifty hours of holistic treatment provided for inmates, and began providing free preventive health and wellness services to religious organizations and the community (see Exhibit J and Exhibit K)

Her two decades of experience as an entrepreneur and her decade of experience in the criminal justice system enabled Gu to transform the company she founded in 2013 into a not-for-profit social tech service provider. Her company began developing socially responsible IHAI technology in 2021 in collaboration with developers in Belarus to address contemporary social problems. A concept that started inside her daily car rides with her children gradually evolved into a global cooperation initiative. Using blockchain technology, time and skills of participants are tracked accurately to garner trust, value, and social impact (see Exhibit L).
.
The goal of Gu's work is to facilitate collaboration and success between small businesses and mission-driven organizations. In a traditional market economy, this will help resolve these groups' most significant challenges and maximize value for all stakeholders. Most of the instrumental design and planning stages were completed

inside the correctional facilities where Gu served her federal prison sentence, a testament to her work ethic, which she has carried with her throughout her life. Those facts are consistent with those presented by her attorney, Natasha Sen, in her sentencing memo dated December 18, 2018 (see Exhibit M).

Gu's family and TCM mentor submitted letters of support to lawyer Mark Oettinger for her violation hearing sentencing. She herself also presented a digital poster depicting her various responsibilities in society. At the time, Attorney Oettinger told Gu that these were filed with her sentencing memorandum. However, Gu recently discovered these were missing from court records (see Exhibit N).

Gu's IHAI project team members also provided the credit reference and feedback to attorney Mary Nurino, an appointed public defender by the court at the time, during the same supervision violation proceeding. Gu's work folder, which contained hundreds of technical and business documents she helped develop and implement following her release in 2020, was also shared with attorney Nurino. Later, Gu learned that these records (Exhibit O and Exhibit S) were not included in her case.

3. NO IDENTIFIABLE RISK TO PUBLIC SAFETY BASED ON THE RISK PREDICTION INDEX (RPI)

On the RPI scale, Gu's case manager conducted an assessment for her at the Drapelick Center, where she scored zero, indicative of minimal recidivism risk.

4. NO AGGRAVATED ROLE IN THE OFFENSE OF CONVICTION, PARTICULARLY LARGE DRUG OR FRAUD OFFENSES; NO HISTORY OF VIOLENCE; NO RECENT EVIDENCE OF ALCOHOL OR DRUG ABUSE; NO IDENTIFIABLE RISK TO THE SAFETY OF ANY IDENTIFIABLE VICTIM.

5. Furthermore, Gu submits the following information concerning facts about events in her life that she believes warrant this petition's consideration by the court.

In 2022, Gu's disabled adult son Philip told his own mental health therapist about the accidental death of his dogs while receiving substance abuse treatment. After being charged with animal cruelty by the state, Philip was ordered by the court to keep away from animals. This was on the same day Gu was instructed to report to prison. When Gu's counsel unsuccessfully requested a postponement of her report, the marshal took her to prison, and the next day, the city's animal control department seized all the therapy dogs while Gu was away and brought a lawsuit against her for monetary compensation for caring for the animals. As part of his response, Gu filed a counterclaim against the town and attended court hearings from within the federal prison. It wasn't until October 2023 that Gu obtained exculpatory evidence and filed a Motion for Summary Judgment pro se (see Exhibit P) for the lawsuit.

Based on her son's SSI disability determination (see Exhibit Q), the probate court appointed Gu as his conservator in 2021. She set her duty to protect her son's interests as a priority while defending herself against various legal challenges.

Due to his biological makeup and traumatic life experiences, Philip suffers from complex

P a g e  7 | 11

mental health conditions. Both his executive and cognitive functions are hindered because of his slower-than-normal brain development and neurological abnormalities. It was significant that these physiological challenges were made worse by the abuse Philip suffered as a child by his biological father, years of absence of Gu from his life, Matthew Abel's abandonment, who was Gu's significant other at the time and a co-defendant in the federal case, as well as the betrayal of friends he trusted yet who scammed and burglarized him (see Exhibit R-1).

In 2020, after serving 36 months of her first prison term, Gu returned home to a home shattered by her disabled adult son Philip's addiction and law enforcement harassment. Before her incarceration, this boy had no criminal record, went through rigid discipline at a military academy, and was homeschooled without health crisis. Despite being diagnosed with ASD at a young age, he was repeatedly misdiagnosed by American schools and healthcare systems. Thus, he missed out on critical services and educational support. As his mother and healthcare advocate, Gu wrote letters to Philip's counselors, law enforcement, attorneys, and news media, providing crucial support for him inside and outside the BOP (see Exhibit R-2).

In the aftermath of Gu's incarceration, Philip was left alone in a criminal justice system that offered bare minimum representation by public defenders who were unable or unwilling to devote time to him, isolated, neglected, and ostracized by society (see Exhibit S). The TCM knowledge and skillset Gu employed in her mental and physical health treatment and therapy helped Philip heal from trauma and manage his mental health challenges.

Given the court's finding that Gu violated supervised release for issuing a bad check, despite evidence supporting it stemmed from Philip's problematic behaviors, Gu believes these records are

relevant. Among the reasons for this is the lack of complete information about Philip's mental health conditions that were not sufficiently reflected in the documents provided by her counsel to the court.

Gu's demanding work schedules and life obligations leave little time for generosity towards those in need. Some of the training and community outreach events she has been invited to require travel outside her home state. Her conditions of supervised release limit these possibilities and could pose a potential liability to the organization's growth. Delays in developing and exposing in-demand social services can negatively impact the health and sustainability of grassroots stakeholders and the future viability of mission-centered innovations. These potential consequences will not be a factor if she is released from her supervision early (Exhibits T and U).

In support of her character, Gu also submits newly discovered evidence obtained from her trial counsel, Lisa Shelkrot, containing notes taken by investigator Susan Randall during an interview with attorney Jackie Chan (see Exhibit V). Attorney Chan was abruptly dismissed by attorney Shelkrot one day before he was scheduled to testify on Gu's behalf. According to attorney Chan's email to Gu in 2017, he had boxes of legal documents ready to bring to Gu's trial and could not understand why he was dismissed. Gu's 2255 petition to the court represented the facts surrounding attorney Chan's dismissal and various others that she had not learned until after her release, as the basis for her claim of ineffective assistance (see Exhibit W).

Much clarity can be found in the words of her own children, family, and friends. As an exhibit, Gu submits a collection of letters she received while imprisoned, including one written in Chinese, sent by her friend, whom attorney Shelkrot also dismissed as a defense witness. Her letter

(pages 33 to 42) provided factual evidence that Gu was innocent of bank fraud and passport convictions (see Exhibit X). Nevertheless, Natasha Sen, the court-appointed attorney representing Gu at the time, prohibited it from being admitted for sentencing.

In recognition of her work, Gu was appointed the directorship at Bamboo Temple in 2023, a faith-based nonprofit with multi-state reach in New England. A letter of support from John Robinson, a member of its board, and Gu's letter of appointment as an independent director for the organization are attached to the exhibit (see Exhibit Y).

The last exhibit presents Gu's narrative of events leading up to the transmission of this petition, providing an easy-to-understand timeline and clarifying the reasons for the delay (see Exhibit Z).

## CONCLUSION

In light of her case's complexity, her persistent and diligent effort, verifiable achievement, and steadfast performance under exceptional circumstances outlined in this petition as well as in her 2255 petition filed with this court in February 2023, she respectfully asks for the early termination of her supervision term under 18 U.S.C. 3583(e)(1).

Gu asks that a person like her who made mistakes in the past be treated compassionately by the honorable court. Gu deserves human treatment regardless of race, religion, or cultural beliefs. The lack of understanding of her culture and life circumstances has in part led to a decade of trials

and tribulations for her. She continues to suffer because society and those in power have formed an incorrect perspective and assumption based on her federal convictions.

Gu has learned that even with time, her silence cannot erase or reverse collateral damage due to an incomplete frame of reference and an insufficient means of verification. As society continues to progress through the work of countless resilient and remarkable human beings, the justice system should not ask for more when someone has already been punished. Neither should it ignore those with real human stories, even if a punitive mindset does not mean to prejudice them. In earnest, Gu's words and deeds deserve compassion and understanding from the Honorable Court in the most objective way possible. This will enable her to pursue her life's purpose steadfastly with faith and trust in time, contributing value and making more meaningful contributions to humanity.

Respectfully submitted on this 24th day of November 2023.

By: _____
Alison Ling