# EXHIBIT L



Software Development Contract No.: 09/05-21
with an Effective Date of September 5, 2021

Minsk, Republic of Belarus

This Software Development Contract (the "Contract") is entered into by and between Spar Corporation, United States of America ("the Customer"), represented by Alison Ling, and PixelPlex Labs LLC, Republic of Belarus, (the "Contractor"), represented by Alexei Dulub, Director, herein referred to collectively as the "Parties" and individually as a "Party." Each Party warrants the named individual is lawfully entitled to bind the Party to this Contract.

WHEREAS the Customer and the Contractor wish to enter into this Contract pursuant to which the Contractor shall perform certain Work for the Customer as described in the Appendix or Appendices hereto and, from time to time, as may be further described, amended, added to, or subtracted from by mutual agreement as provided herein;

AND WHEREAS the Contractor represents it has the experience, skills, and technical capabilities to develop, provide, and perform the Work that is the subject of this Contract and the Appendices hereto;

AND WHEREAS the Work shall be performed in accordance with the terms and conditions in this Contract, including without limitation, the Appendix or Appendices hereto and such other alterations as may be mutually agreed, all of which shall be deemed incorporated herein by this reference;

NOW THEREFORE in consideration of the mutual promises and conditions set forth in this Contract and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. DEFINITIONS

1.1 Business Day - A day of the week excluding Saturdays, Sundays, and public holidays in the Republic of Belarus. A public holiday includes a day of the week replacing a public holiday falling on a Saturday or Sunday.

_____ Alison Ling                    _____ Alexei Dulub

1.2  Certificate (Certificate of Completion) - The primary accounting document which the Contractor may draft unilaterally to confirm completion of Work and price paid for accounting purposes in the Republic of Belarus.

1.3  Electronic Means of Communication - Messages and document/other data transfers between the email address each Party designates as the email address for communication with respect to, and administration of, this Contract.

1.4  Intellectual Property Rights - Proprietary, exclusive rights arising under or associated with: (a) patents and similar or equivalent rights relating to inventions; (b) copyrights, proprietary rights, "moral rights," and any other rights of authors in or with respect to works of authorship; (c) applications for registration, revision, continuation, reissuance, renewal, extension, restoration, and reversion of the foregoing; and (d) all other similar or equivalent intellectual property or proprietary rights created by any law in any jurisdiction worldwide.

1.5  Invoice - A document drafted by the Contractor from time to time containing an amount due for payment by the Customer for Work performed.

1.6  Reporting Period - For the purposes of acceptance of Work and/or payment, a month or other mutually agreed period of time after commencement of the Work hereunder.

1.7  Requirements List - A description of the Work to be performed, the order/steps in which the Work is to be performed, if any, the price paid for the Work including how and when payable, and such other, related terms and conditions as set out in the Appendix or Appendices hereto, subject to such alterations as may be mutually agreed from time to time as provided herein.

1.8  Software - Computer program(s) created by the Contractor on the basis of a Requirements List.

1.9  Work - Design and development of Software including, without limitation, research, discovery, and/or other effort or services by the Contractor as mutually agreed, and the product (result) of such design, development, and other efforts or services.

_____ Alison Ling                               _____ Alexei Dulub

2. SUBJECT OF CONTRACT

2.1  The Contractor undertakes to perform the Work on the basis of the Requirements List (as amended from time to time by mutual agreement as provided herein, if applicable) and shall transfer the Work to the Customer pursuant to the terms and conditions set out herein.

2.2  The Customer undertakes to provide the Contractor with any information that is required for the performance of the Work, and to accept and pay for completed Work pursuant to the terms and conditions set out herein. If required by the Contractor, the Customer shall name a Point of Contact person to coordinate or carry out the Customer's obligations herein. The Customer warrants that agreement by said Point of Contact person to an amendment or addition to, or subtraction from, the Requirements List (or otherwise to the Work to be performed), and to the price to be paid from time to time, shall constitute agreement by the Customer.

2.3  Work (including Software development) is performed in stages and Reporting Periods. The stages of Work (including Software development) shall be mutually agreed: (a) in an Appendix or Appendices; or (b) by Electronic Means of Communication; in both cases, if applicable from time to time, as further described, amended, added to, or subtracted from by mutual agreement as provided herein. The Contractor determines the processes and methods of Work performance in its sole discretion within the limits of the Requirements List.

2.4  The period of time within which the Work is to be completed is defined by the Contract period or such other period as may be mutually agreed. The period of time (number of Reporting Periods) within which each stage of Work is to be completed shall be as mutually agreed: (a) in an Appendix or Appendices; or (b) by Electronic Means of Communication.

2.5  Except as explicitly set out in this Contract, the Contractor makes no representations or warranties, express or implied, with respect to the Work, including but not limited to any warranties of merchantability, fitness for a particular purpose, or any warranties arising as a result of the Customer's use of the Work in trade. Any and all such warranties are hereby expressly and specifically disclaimed. The Contractor further disclaims any and all warranties that the Work will perform to any degree whatsoever if used with software or hardware with which the Work is not compatible.

_____ Alison Ling                                    _____ Alexei Dulub

3.  CONTRACT PRICE AND PAYMENT PROCEDURE

3.1  The price the Customer pays for the Work is based on the Contractor's cost of labor to perform the Work as specified in the Requirements List and calculated in accordance with the provisions of the applicable Appendix, whether fixed price or special rates, subject to amendment from time to time by mutual agreement as herein provided.

3.2  All costs, prices, and payment amounts pursuant to this Contact are expressed in US dollars. All payments between the Parties shall be processed in US dollars.

3.3  The form of payment is bank transfer via payment order in accordance with the banking details of the Parties. A payment is received when the funds are credited to the receiving Party's bank account.

3.4  The amounts and timing of the Contractor's invoices for Work performed shall be as specified in the Requirements List, subject to amendment from time to time by mutual agreement as herein provided. The Customer shall pay invoices within five (5) Business Days of the date thereon.

3.5  A VAT is not payable in the Republic of Belarus as of this Contract's Effective Date. In the event that a VAT or tax of similar nature becomes payable in the Republic of Belarus, the Contractor shall comply with the law in force from time to time and the Customer hereby agrees to pay any such tax.

3.6  All fees, taxes, bank commissions, and/or other expenses related to the execution and conclusion of the Contract charged by or within the Customer's country, state, province, municipality, or other jurisdiction of whatsoever nature, whether legal or extralegal, shall be borne solely by the Customer and shall not be deducted from, or otherwise set off against, an invoice amount.

3.7  If, in order to avoid double taxation or to otherwise lawfully avoid paying taxes, it is necessary for the Customer to confirm that the Contractor is permanently domiciled in (a resident of) the Republic of Belarus, the Customer shall request from the Contractor such documentation as it has been advised is necessary for such purpose thirty (30) days in advance of the Effective Date. The Contractor shall make all commercially reasonable efforts to obtain such documentation if it is not already in its possession, the costs of such efforts to be reimbursed by the Customer. The purpose of this provision is to ensure the absence of the

_____ Alison Ling                                _____ Alexei Dulub

required documentation does not impede or prevent the timely performance of the Contract by the Parties.

4. RIGHTS AND OBLIGATIONS OF THE PARTIES

4.1 The Customer is entitled:

(a) To receive information on the progress of Work performance (including Software development) by Electronic Means of Communication (or otherwise) according to a schedule mutually agreed or an on ad hoc inquiry basis with reasonable frequency.

(b) To be advised by the Contractor within a reasonable period of time should Work fall behind the schedule provided in the Requirements List (as amended from time to time by mutual agreement) and whether the Contractor will be able to take reasonable steps to bring the progress of the Work back in line with the Requirements List or, alternatively, whether the schedule will require amendment. The Customer warrants that its agreement to any such amendment shall not be unreasonably withheld.

(c) Subject to section 6.2, to advise the Contractor of any perceived deficiency in the Work and of its Intention to Refuse the Work performed in a Reporting Period within five (5) Business Days from the end of the Reporting Period, subject to the obligations: (i) that such Refusals shall not be made unreasonably and that the Customer will explain the basis for its Refusal; (ii) in no event shall a Refusal be maintained for more than five (5) business days from the end of the applicable Reporting Period; and (iii) a Refusal shall not be the basis for failing to pay (or delaying payment) of the invoice relating to the Reporting Period to which the Refusal relates, or any other invoice. The parties agree to use commercially reasonable efforts to resolve a Refusal in good faith.

(d) If, after the 5 (five) business day period set out in subsection 4.1(c) and notwithstanding the Contractor's efforts to resolve the concern raised, the Customer cannot provide reasonable Refusal but declares to the Contractor crucial reasons of its intention to cease Work performance further and the Contractor accepts such reasons, the Customer may terminate this Contract upon thirty (30) business days written notice and upon paying in full for the Work scheduled to be performed during and till such notice period. For clarity, the Customer may terminate this Contract no earlier than thirty-five (35) business days from the end of the Reporting Period to which the Customer's intention to cease Work performance relates and upon payment in full for all Work scheduled to be completed during thirty-five (35) business days, whether or not the Work is actually completed.

4.2 The Customer is obligated to:

_____ Alison Ling                    _____ Alexei Dulub

(a) Provide the Contractor with all information required for the performance of Work within three (3) Business Days after receipt of a request, by Electronic Means of Communication or otherwise.
(b) Make timely and full payments for the Work as set out in this Contract.

4.3 The Contractor is entitled to:
(a) Request and obtain from the Customer in accordance with section 4.2(a) any information required for Work performance.
(b) Extend the period of Work performance by the number of Business Days the Customer delays provision of information pursuant to sections 4.2(a) and 4.3(a) or the number of days payment of an invoice is delayed.
(c) Engage any third parties to carry out the Work.
(d) Develop, use, and assign any rights to software (or any of its elements) similar to the technologies of the Work. The Contractor shall not use Work and shall not retain any Intellectual Property rights on the Work provided all measures to escape the infringement of any rights of the Customer in connection with such Work.
(e) With the Customer's agreement, which shall not be unreasonably withheld, complete and transfer the Work to the Customer ahead of schedule and invoice and receive payment correspondingly ahead of schedule.
(f) For the purpose of promoting its enterprise, services, and work, on its website or in advertising in any media, in perpetuity, describe the non-confidential information on Work without the Customer's prior consent. The Customer hereby grants to the Contractor perpetual worldwide license to use the Customer's name and trademarks for such purpose.

4.4 The Contractor is obligated to:
(a) Perform the Work (including Software development) and transfer Work (including Software) to the Customer pursuant to the terms set out in this Contract, such transfer to be carried out in accordance with the Customer's reasonable instructions.
(b) Advise the Customer within a reasonable period of time of any circumstance which may cause the Work to fall behind the schedule set out in the Requirements List (as amended from time to time by mutual agreement) and whether the Contractor will be able to take reasonable steps to bring the progress of the Work back in line with the Requirements List or, alternatively, whether the schedule will require amendment.
(c) Advise the Customer within a reasonable period of time of any other circumstance (other than actions or failure to act by the Customer) that may influence or inhibit Work performance.

_____ Alison Ling                    _____ Alexei Dulub

(d) In a timely fashion, notify the Customer and suspend performance of Work until further notice from the Customer if the Contractor discovers any potential consequence of following the Customer's instructions regarding the Work or methods of Work performance which are, or likely to be, unfavorable to the Customer and/or the Contractor.

5. INTELLECTUAL PROPERTY RIGHTS

5.1  The Contractor hereby grants to the Customer exclusive Intellectual Property right in and to the Work (including Software) upon final acceptance and payment in full by the Customer.

5.2  The Contractor hereby grants to the Customer with respect to the Work (including Software) all Intellectual Property Rights, including, but not limited to: the rights to: copy the Work; rent copies; import copies; publicly perform or demonstrate the Work; and translate the Work. The Customer's exclusive rights to the Work shall extend to all the territories of every country in the world and shall remain in force for the whole period of applicable Intellectual Property rights duration.

5.3  The cost of the Customer's Intellectual Property rights in and to the Work is included in the Customer's payment(s) for the Work and is not subject to additional payment.

6. PROCEDURE FOR TRANSFER OF WORK

6.1  The Contractor shall transfer Work to the Customer at the end of each Reporting Period (if, with respect to a Reporting Period, there is completed Work that is transferable) and, finally, upon completion of this Contract by Electronic Means of Communication or such other reasonable method of transfer requested by the Customer.

6.2  If applicable in terms of the Work's development, the Customer shall review the Work and, subject to Section 4.1(c), indicate acceptance by Electronic Means of Communication within five (5) Business Days of receipt or Refuse from Work. Work shall be deemed to be accepted if the Customer does not provide the Contractor with any feedback within five (5) Business Days.

7. LIABILITY AND INDEMNIFICATION OF THE PARTIES

7.1 In the event the Customer fails to make a payment (prepayment, interim payments, if any, and final payment in full settlement) in accordance with its obligations pursuant to this

_____ Alison Ling                                    _____ Alexei Dulub

Contract, in addition to any other rights the Contractor may have, the Contractor shall be entitled to recover from the Customer a penalty in the amount of one-tenth of one percent (0.1%) of the payment in arrears per overdue day.

7.2  In the event of a Party's insufficient, untimely, or non-performance of its obligations pursuant to this Contract, that Party is exempt from liability if the insufficiency, untimeliness, or non-performance results from a force majeure confirmed by major media reports or a state body in the country in which the event occurs. Within ten (10) days of a force majeure event, the Party unable to fulfill its obligations shall notify the other Party of the cessation of its activities, the anticipated duration of the cessation (if and when known), and, when conditions have been corrected, that has it resumed performance of the Work. In such circumstances, the Parties shall adjust timelines accordingly. Failure to notify or untimely notification shall deprive the Party affected by a force majeure of suspension of liability for insufficient, untimely, or non-performance as herein provided.

7.3  The Customer understands and acknowledges the Contractor invests heavily in the training and development of its employees and that those employees are critical to the Contractor's ability to carry on its business and meet its contractual obligations. The Customer shall not engage in employment-related discussions with the Contractor's employees who are performing Work pursuant to this Contract. If an employee of the Contractor is hired by the Customer during the period of this Contract, or within five (5) years of its termination pursuant to sections 4.1(d) or 12.1, the Customer shall pay to the Contractor the sum of one hundred thousand US dollars (USD100,000), which the Customer acknowledges and agrees is a reasonable pre-estimate of the Contractor's cost of replacing the employee.

7.4  The Customer hereby indemnifies and saves harmless the Contractor, its shareholders, directors, employees, subcontractors, consultants, and/or affiliated or associated companies from any and all liabilities, claims (including, but not limited to, claims for injunctive relief), damages, losses, liens, causes of action, suits, civil, criminal, statutory, or administrative actions or proceedings, fines, taxes, assessments, penalties, judgments, and/or other expenses of any kind, nature or description whatsoever (including, but not limited to, the Contractor's attorney's fees and expenses and costs of investigation) resulting from or related to the Customer's use or misuse of the software application (or any other Work) created for, or provided to, it by the Contractor, whether or not such use or misuse is negligent, wilful, criminal, or otherwise results in a claim or prospective claim by any third party howsoever aggrieved. Without limiting the generality of the foregoing, the Customer hereby indemnifies and saves harmless the Contractor from liabilities for or relating to the Customer's use or

_____ Alison Ling                              _____ Alexei Dulub

misuse of the software application (or any other Work) created for, or provided to, it by the Contractor to commit fraud or mischief, or to engage or attempt to engage in fraudulent or legally mischievous acts, including hacking, phishing (or similar illegal or unethical acts). This indemnification includes for liabilities or claims for personal injury, bodily injury, emotional distress, real and/or personal property damage, and economic loss resulting from any action or inaction by the Customer.

8. LIMITATION OF LIABILITY

8.1  In no event shall either Party be liable for any indirect, special, or consequential (including loss of profits), exemplary, or punitive damages arising out of or related to this Contract, or the performance, non-performance, or breach of this Contract, even if notice of the possibility of such damages has been given. Liability pursuant to this Contract, if any, shall in no event exceed the lesser of $25,000 and the total of the payments received by the Contractor at the time liability was incurred.

9. DISPUTE RESOLUTION

9.1  This Contract shall be governed by and constructed in accordance with the laws of the state New York, United States of America. In all matters not regulated by this Contract, the Parties shall apply the laws the state New York, United States of America.

9.2  Any dispute, claim, or disagreement arising out of or relating to rights or obligations pursuant to this Contract including, without limitation, the completion of the Work and consequent conclusion of the Contract, or the execution, interpretation, breach, or termination of the Contract, as well as any other dispute that may arise between the Parties with regard to relations arising out of or in connection with this Contract shall be referred to the courts of the state New York, United States of America.

9.3  The Parties agree to compulsory mediation of all disputes in advance of arbitration and undertake to make good faith efforts to resolve their differences.

10. CONFIDENTIALITY

10.1  The Parties each undertake to take all commercially reasonable efforts to protect the integrity and confidentiality of information, including source files, that the disclosing Party identifies as Confidential Information. Without limiting the generality of the foregoing, each

_____ Alison Ling                                    _____ Alexei Dulub

Party shall take all commercially reasonable measures to protect Confidential Information in its possession from unauthorized access, transfer to third parties (other than third parties hired by the Contractor to perform Work and as necessary to carry out the Work), illegal or unauthorized copying, reproduction, publication, dissemination, or any other use or disclosure thereof, unless by mutual agreement or where disclosure is required by law. Additionally, the Parties shall take all commercially reasonable measures to protect Confidential Information from any harm, tampering, exploitation, manipulation, modification, interference, misuse, or misappropriation.

10.2  Only employees, consultants, advisers, subcontractors, or partners of the Parties directly involved in the execution of this Contract shall be provided access to Confidential Information.

10.3 The rights and obligations in this section shall not apply to Confidential Information to the extent that: (i) it becomes publicly known for reasons that do not involve a breach of this Contract; (ii) its disclosure has been approved by the Party whose Confidential Information it is; (iii) it is disclosed on a confidential basis for the purpose of obtaining professional advice, or (iv) it is required to be disclosed by law, a court of competent jurisdiction, or government body. In such latter case, the Party in possession of the other Party's Confidential Information shall provide that Party with a reasonable opportunity to review the prospective disclosure and object thereto.

10.4  The Parties' obligations with respect to Confidential Information shall remain in place for three (3) years after the conclusion of this Contract.

10.5  In the event the Parties entered into a Mutual Non-Disclosure Agreement ("MNDA") on or before the Effective Date of this Contract for the purpose of facilitating discussions and exchanges of information in anticipation of entering into this Contract, the MNDA shall for all purposes terminate with the execution of this Contract. For clarity, upon execution of this Contract, this Section 11 shall be the only contractual language governing the Parties' rights and obligations with respect to Confidential Information.

11. DIVESTED ENTITIES.  In the event that any Affiliate or any business division of the Customer or an Affiliate of Customer is sold, in part or in whole, to a third party or otherwise elects to enter into a services agreement with Contractor (each a "Divested Entity"), and if such Divested Entity so requests, Contractor agrees to promptly enter into a services agreement with such Divested Entity that is functionally identical and equivalent to the terms and conditions of this Agreement.

_____ Alison Ling                              _____ Alexei Dulub

12. MISCELLANEOUS

12.1  This Contract shall come into force on the Effective Date and shall remain in force during 1 (one) year. If none of the Parties require termination of the Contract 30 (thirty) calendar days prior to its expiry date, the Contract shall be considered prolonged for the same period.

12.2  This Contract may be terminated by the Contractor at any time with 5 (five) days written notice if the Contractor, in its sole and exclusive discretion, determines that it is in its best commercial, reputational, or other interest to do so. The Contract may be terminated by the Customer in cases specified in section 4.1(c).

12.3  Sections 2.5, 4.3(d), 4.3(f), 5, 6, 7,  8, 9, 10, 11 and 12.3 shall survive the termination or expiry of this Contract.

12.4  This Contract may be executed in two (2) counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one Contract binding on the Parties hereto.

12.5  Changes and amendments mutually agreed by the Parties to the Work, the Requirements List, or any other right, obligation, or part of this Contract, whether evidenced by an additional Appendix or Appendices or by the exchange of Electronic Means of Communication shall be incorporated herein by reference. In the event of conflicting changes or amendments, the change or amendment later in time shall govern.

12.6  This Contract is valid with the signatures of the Parties' representatives obtained by transfer of the Contract documents by Electronic Means of Communication.

12.7  The Parties acknowledge the legal force of documents, notes, requests, notifications, and information communicated by Electronic Means of Communication.

12.8  An Electronic Means of Communication shall be deemed to have been received within one (1) Business Day unless the sending Party receives notification from its email service provider or the intended receiving Party that it has not been delivered or received.

12.9  Neither Party shall assign its rights or obligations pursuant to this Contract without the prior written consent of the other Party.

_____ Alison Ling                                        _____ Alexei Dulub

12.10  The Parties shall inform each other in writing of changes to their legal details (name, signing officer, etc.), address, email address, or any other information reasonably necessary for the other Party to know not later than three (3) business days after such change is made.

If a Party fails to inform the other Party of a change to the email address designated as its email address for communication with respect to, and administration of, this Contract, the former email address shall be deemed to be the appropriate address for communication and all communication sent to the former email address shall be deemed delivered and received.

_____ Alison Ling                                   _____ Alexei Dulub

13. DETAILS OF PARTIES

| The Customer:<br>Spar Corporation<br>(United States of America)<br><br><br>Address: 314 MAIN STREET,<br>PO BOX 4416<br>WALLINGFORD, CT, 06492 | The Contractor:<br>PixelPlex Labs LLC<br>(Republic of Belarus)<br>EIN: 193039967<br><br>Legal address: 72 Timiryazeva st., 9th floor, office 9009, Minsk, Belarus, 220035<br><br>Bank details:<br>Beneficiary: LLC "PixelPlex Labs"<br>Beneficiary's Bank: CJSC "Alfa-Bank"<br>SWIFT: ALFABY2X<br><br>Beneficiary's Account<br>BY02 ALFA 3012 2317 1800 2027 0000 (USD)<br><br>Bank address: 43-47 Surganova Str., 220013 Minsk, the Republic of Belarus<br><br>Intermediary/correspondent banks:<br>Account No.: 36367576<br> CITIBANK N.A. (388 Greenwich Street, New York,  10013, USA) SWIFT — CITIUS33<br><br>Email: alexei.dulub@pixelplex.io |
|---|---|
| Position _____Director_____ | Position _____Director_____ |

_____ Alison Ling                               _____ Alexei Dulub

Appendix No. 1 to Software Development Contract No.: 09/05-21
with an Effective Date of September 05, 2021

REQUIREMENTS LIST No.: 1
with an Effective Date of September 05, 2021.

1. GENERAL PROJECT DESCRIPTION

Research and development of the Spar project.

2. WORK DESCRIPTION

2.1  Research and discovery phase of the project's key components.
2.1.1. Blockchain protocol and network selection and analysis. Strategic assessment of available blockchain networks and protocols and selection of the most suitable network. Form of the deliverable document - a document.
2.1.2. Third-party integrations assessment, including wallets, fiat ramps, and exchange protocols. Form of the deliverable document - a document
2.1.3. Project ideation and scope document, a list of features to be introduced in the system - a form
of the deliverable outcome – a document. Project limitations, risks, goals & success criteria.
2.1.4. Definition of the system components. User flow diagrams, outlining the general user journeys
and the in-system data and financial flows — a form of the deliverable outcome – a diagram.
2.1.5. Preparation of the project charter, as a guiding document for the whole project, including the
main project goals, high-level project timeline, decision-makers, and project role matrix. Form of the
deliverable outcome - document;
2.1.6. System architecture diagram and tech stack selection and description, including programming
languages, libraries, frameworks, and SDKs to be used to develop the end-product. Form of the deliverable outcome – a diagram and a document.
2.1.7. Suggested blockchain network parameters and capabilities, based on the features and user
journeys (documented). Form of the deliverable outcome – a document.

_____ Alison Ling              _____ Alexei Dulub

2.1.8. Project roadmap - a Gantt-chart with the plan for delivery of the project components over time.
Form of the deliverable outcome – a diagram.

3. REPORTING PERIODS

3.1  Each Reporting Period is two (2) weeks (forteen (14) days) beginning on the Effective Date.
3.2  At the conclusion of a Reporting Period, the Contractor shall, if applicable, transfer to the Customer Work completed in the Reporting Period. The Contractor shall also, as applicable, transfer Work to the Customer throughout each Reporting Period in order that the Customer is constantly apprised of progress being made and so that the Customer can make any suggestions or raise any concerns in a timely manner.
3.3  The Parties may agree upon another period of time for the Reporting Periods.

4. COST OF WORK AND PAYMENT PROCEDURE

4.1 The total cost of the Work that is the subject of this Appendix is the sum of the cost of the Work under clause 4.2 and the additional cost of Work based on the hourly rates which may arise under clauses 4.3-4.4.
4.2  The cost of Work described under clauses 2.1.1-2.1.8 is specified as 22 000 (twenty-two thousand) US dollars and covers 440 hours (allocated time) of the dedicated team work, members of which will be appointed and allocated by the Contractor due to the required roles. Such a dedicated team provided for the Work performance for all allocated time.
4.3. In cases when the performance of Work described under clauses 2.1.1-2.1.8 requires additional hours to complete fully such Work the Contractor will allocate additional hours of the dedicated team members described as per clause 4.4 to execute such Work and the cost of such additional Work shall be calculated by multiplying the hourly rate of the Contractor's dedicated team members mentioned in clause 4.4 and carrying out Work by the number of hours each team member spent performing Work (labor costs). Labor costs per additional hours which may be invoiced to the Customer in any cases shall not exceed 6 000 (six thousand) US dollars (limit) hereunder and the Contractor shall take all reasonable measures not to come away from such a limit.
4.4  The hourly rates of the Contractor's dedicated team members for the purposes of additional costs calculation are:
Project Manager - 50 USD per 1 hour per 1 team member;

Business Analyst - 55 USD per 1 hour per 1 team member;

_____ Alison Ling                                    _____ Alexei Dulub

Blockchain Consultant - 80 USD per 1 hour per 1 team member;

Researcher - 35 USD per 1 hour per 1 team member;

Full-Stack Developer- 85 USD per 1 hour per 1 team member;

Blockchain Architect - 100 USD per 1 hour per 1 team member.

4.5 The Contractor may replace dedicated team members in the event of vacation, sick or other authorized leave, termination, or for any other reason it, in its sole discretion, determines is necessary for the efficient performance of Work consistent with its obligation to assign team members to carry out the Work who have the experience, skills, and technical capabilities to do so.

4.6  The Customer shall make payments as invoiced in the manner and within the payment period set out in section 3 of the Contract (5 business days) as follows:

4.6.1. An advance payment in the amount 11 000 (eleven thousand) US dollars prior to the start of Work;

4.6.2. After 4 weeks of Work progress, a second payment in the amount 11 000  (eleven thousand) US dollars;

4.6.3. On a regular basis bi-weekly payments in cases when additional hours may arise prior Work performance per Reporting period (2 weeks).

4.6.3.1. When the Contractor determines that Work performance requires additional hours the Contractor shall pre-estimate the cost of such Work per Reporting period under clauses 4.3-4.4, taking into consideration the limit,  and provide to the Customer with an invoice which reflects pre-estimated labor costs;

4.6.3.2. If actual labor costs per Reporting period exceed the pre-estimated labor costs specified hereunder and paid by the Customer, the undrawn amount shall be put toward reducing the invoice amount for the next Reporting Period. If the pre-estimate labor costs paid by the Customer per Reporting period is less than the actual labor cost, the unpaid amount shall be added to the invoice amount for the next Reporting Period or next invoice.

pixelplex

Confidential document. Owned by PixelPlex Labs LLC.
Unauthorized copying and misuse of this document are strictly prohibited.

_____ Alison Ling                                 _____ Alexei Dulub