UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | )   Crim. No. 2:16-cr-84 |
| | ) |
| ALISON GU, | ) |
|     Defendant. | ) |

**RESPONSE TO POST-HEARING MEMORANDUM**

The Court should deny Alison Gu's § 2255 Motion. Though she continues to complain of trial attorney not pursuing Gu's preferred trial strategies, Gu has failed to allege any conduct on the part of her trial attorney which falls outside the wide range of reasonableness. She has also failed to establish a reasonable probability that the outcome of her trial would have been different had counsel adopted any of Gu's strategic preferences.

These conclusions follow even if the Court considers Gu's latest tome of unsupported factual assertions. *See* ECF No. 472. The Court should not, however, indulge Gu's latest attempt to fabricate new evidence to try to keep her § 2255 motion alive.

1

Over 10 months ago in September 2024, the Court ordered Gu "to advise the court and the United States which of her claims for ineffective assistance of counsel she intends to pursue, the specifics of each such claim, and the remedies she seeks for each such claim." ECF No. 437, at 2. Gu did so on November 4, 2024. ECF No. 442. Then, in March 2025, after consulting with Gu, the Court scheduled a hearing for June 23 on Gu's motion. At the June 23 hearing, Gu failed to take advantage of her opportunity to put evidence before the court in the form of testimony from real people. *See* Tr. (June 23, 2025), at 5-6 (the Court advising Ms. Gu that "this was the opportunity today. And you either present witnesses or you don't. That's up to you.").

Having failed to take advantage of the opportunity to present the Court with real evidence, on July 7, Gu now submitted over 300 pages of material, mostly factual, in an apparent effort to prolong this post-conviction proceeding. But none of this material, even if considered, tips the scale in Gu's favor.

For example, in her latest filing she provided the Court with emails she purportedly wrote to chemists two months before her trial in which she states that in connection with her offenses she "was being involuntarily intoxicated (drugged) by someone." *See* ECF No. 472-2, at 2. She then complains that her attorney did not follow up on this potential involuntary intoxication defense. ECF No. 470, at 6-7. Of note, Gu's efforts to obtain help establishing an intoxication defense are

2

inconsistent with her post-conviction arguments that the crux of her defense was the identity of the offender. ECF No. 470, at 5-6. In other words, as previously explained, it was plainly reasonable for Gu's counsel not to pursue defense theories that Gu herself undermined. For this reason, contrary to Gu's argument, it was also plainly reasonable for Gu's counsel to "insist[] on acting as a gatekeeper for all investigative activity." ECF No. 470, at 6.

It was also reasonable for counsel not to call Gu's co-conspirator, Matt Abel, to testify despite Gu's arguments to the contrary. *See* ECF No. 10-11. Abel had already pleaded guilty to bank fraud. In his plea agreement, Abel admitted that it was part of the fraud scheme for Alison Gu to "establish false identities using the Social Security Number of a deceased individual and applied [with Abel] for loans from" victim banks, and that he assisted Gu in obtaining mortgage loans under false identities. ECF No. 148, at 6-8. At his change of plea hearing, Abel would have confirmed under oath, that he had entered into that agreement. It was, therefore, categorically not unreasonable to call Gu's confederate in crime as a defense witness.

Gu's purported new evidence relating to an interview between defense investigator and a potential witness "Jenny," ECF No. 472-9, also confirms counsel's reasonableness. First, it confirms the defense team was utilizing investigators to try to develop a theory of defense. Second, assuming Gu's

3

interpretation of the interview report is accurate, "Jenny's" failure to recognize a photo of Gu as Gu, would only undermine Jenny's credibility. For example, "Jenny" appears to have confirmed that Gu was the person depicted on the Ally Koo driver's license. ECF No. 472-9, at 3. And Gu herself confirmed that the photos on both the Ally Koo and and Ai Chen New Hampshire Drivers licenses were Gu. *See* Tr. (Nov. 6, 2017), at 161-62. Gu's contention, made almost eight years after her trial, that "Jenny" could have supported a theory of misidentification, ECF No. 470, at 12, is therefore wholly unsupported speculation.[1]

    Gu's latest contentions about her father also fail to meet her burden. First, there is nothing in the recently filed statement purporting to be from her father, ECF No. 472, that could not have been provided to the Court in Gu's September 2024 filing. Second, there is nothing in his statement that suggests counsel acted other than in an effort to develop and protect a theory of defense that would not be undermined by Gu manipulating her father-witness. And he offers purely non-

---

[1] This is especially so because the evidence against Gu included: (1) her appearance on surveillance video at the St. Albans passport office when she sought to obtain a passport in a false name and (2) the presence of some of the fraudulently obtained identification documents used at the passport office in Gu's Cheshire, Connecticut, home. ECF No. 204 (Order denying Gu's post-trial motion), at 2. Also present at her home were (3) the tools Gu used to forge fake orders of the Montgomery County, Alabama, probate court, pretending to change the name of a person long-since dead to the name Gu used to commit her frauds. *See id.* Further, (4) Gu admitted to being the purchaser behind the real estate transactions financed with loans obtained in a fake name. *Id.* at 3-4. And (5) similarities between loan application packages further confirmed they were submitted by the same person. *Id.* at 4.

credible speculation to surmise he might have failed to recognize his daughter in the passport office security video depicting his daughter presenting a New Hampshire Driver's license bearing her photo, and other forms of identification that were later found in Gu's residence.

Gu's laments that her counsel did not call Jackie Chan or Philip Russell as witnesses also fails to show that counsel acted unreasonably. As counsel explained, she did an extensive interview of attorney Chan, and concluded his testimony would not be particularly helpful. ECF No. 453, at 18. The record is also clear that the defense investigator interviewed Russell. ECF No. 472-18. But Gu fails to articulate how Chan's or Russell's testimony would have been material to any issue, or would have created any chance of a different outcome at trial. Gu simply mischaracterizes the evidence when she contends the "Danbury real estate case was the direct catalyst for the federal prosecution." ECF No 470, at 25. Danbury is not mentioned in the government's closing argument and the source of the funds for Gu's and Abel's lien-free purchase of their Cheshire home was not a material fact.

Gu's latest filing also appears to cite to non-existent cases. *See* ECF No. 470, at 7 n.2 (citing "*United States v. Smith,* 870 F.3d 1237 (9th Cir. 2017)" as example of a case in which a conviction was reversed "where identity was disputed, and no expert was presented to rebut video-based assumptions.") Among the real cases Gu cites, she incorrectly contends, at ECF No. 470 at 19-20, that her case is like *Wiggins*

5

*v. Smith,* 539 U.S. 510 (2003), in which the Supreme Court found counsel was ineffective when a defense attorney deviated from the "standard practice in Maryland in capital cases" by failing to investigate potentially mitigating evidence to be used at sentencing in a death penalty case. *Id.* at 524. The record in that case, by contrast, revealed that counsel's conduct was the result of "inattention, not reasoned strategic judgment." *Id.* at 526. In all of Gu's filings, there is nothing to suggest her trial counsel was inattentive. Rather, counsel appears to have tried to manage an incorrigibly dishonest client's efforts to fabricate fantastical theories and to support them with false evidence. Nothing in *Wiggins,* suggests that the criminal defendant in that case undermined counsel's ability or efforts to prepare a defense.

This case is also unlike *Nix v. Whiteside,* 475 U.S. 157 (1986), in which the Supreme Court simply said it is not ineffective assistance of counsel to refuse to present perjured testimony. *Id.* at 171-73. Here, the question is whether counsel acted reasonably in making strategic decisions not to present witnesses whose authenticity, credibility, and relevance were dubious. It is clear Gu would have preferred a defense case consisting of fake witnesses. It is also clear that counsel does not act unreasonably in declining to put on such witnesses.

Gu is also wrong to suggest that *Rompilla v. Beard,* 545 U.S. 374 (2005), is relevant to the issue before the Court. In that case, counsel failed to examine available material that was relevant to sentencing in a capital case. In contrast, Gu

cannot show that counsel failed to consider information. Rather, Gu's attorney reviewed and investigated potential theories of defense and sought to curate the best narrative for trial. Gu's disagreement with those decisions does not establish ineffective assistance.

In addition, Gu audaciously tries to complain about counsel's failure to present fake witnesses because "[t]heir very existence, and the nature of their claims, could have reinforced petitioner's narrative." ECF No. at 26. This argument completely misapprehends that declining to put on fake witnesses is not ineffective assistance.

Finally, the Court should not credit, or assume authentic, any statements or documents Gu submits with her filings. Gu's history of fabrication and forgery, coupled with her failure to produce a single live witness, should cause this Court to credit none of her factual arguments. If the Court is to indulge Gu's factual assertions, Gu should be required to present them from witnesses whose identities can be verified, and who can be subjected to cross examination.

At bottom, Alison Gu takes issue with how her attorney handled questions of trial strategy. But "courts are ill-suited to second-guess" such decisions. *Pizarro v. United States,* 2025 WL 1409386, at *6 (S.D.N.Y. May 15, 2025) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)). Because all of counsel's challenged decisions were based on "strategic or tactical" considerations, Gu's

ineffective assistance claims must fail. *Id.* (citing *Luciano*, 158 F.3d at 660); *see also United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial" (internal quotation marks and citation omitted)).

Gu also presents no plausible explanation for how her preferred witnesses would have altered the outcome of the trial. *See* footnote 1, above.

Because Gu cannot make the required showings under *Strickland,* her motion undern § 2255 should be denied.

Dated at Burlington, in the District of Vermont, July 14, 2025.

    Respectfully submitted,
    UNITED STATES OF AMERICA
    MICHAEL P. DRESCHER
    Acting United States Attorney

By: */s/ Michael P. Drescher*
    P.O. Box 570
    Burlington, VT 05402-0570
    (802) 951-6725
    Michael.Drescher@usdoj.gov